# EXHIBIT A



**THE GUARANTEE COMPANY OF NORTH AMERICA USA**
**GENERAL AGREEMENT OF INDEMNITY**

This General Agreement of Indemnity (Agreement) is made and entered into this __20th__ day of ____January____, 2016 by:

| Name | Social Security or Tax ID Number |
|---|---|
| A4 Construction Company, Inc. | ██████ |
| Amy M. Anderson | ██████ |
| Shawn M. Anderson | |

(hereinafter collectively referred to as "Indemnitors"), jointly, severally, collectively and individually, and for the benefit of The Guarantee Company of North America USA, One Towne Square, Ste. 1470, Southfield, Michigan 48076, and its affiliated, associated and subsidiary companies, their successors and assigns (hereinafter referred to as "Surety").

In consideration of the execution of any such Bonds for Principal and as an inducement to such execution by Surety, the Indemnitors, jointly and severally, agree as follows.

**DEFINITIONS:** Where they appear in this Agreement, the following terms shall be considered as defined in this paragraph:

**Principal:** One or more Indemnitors or any existing or future partnerships, joint ventures (whether silent or disclosed), associations, limited liability companies, corporations or other legal or commercial entities in which Indemnitors have or will have a substantial, material, financial and/or beneficial interest, including subsidiaries, associated and affiliated companies who alone or with other Person(s) have secured or may secure the performance and fulfillment of obligations by Bond(s), executed, provided or procured by Surety.

**Bond:** Any and all bonds, undertakings, contracts of suretyship, guaranties or indemnity, issued on behalf of the Principal and signed by the Surety or Additional Sureties, or by the Surety or Additional Sureties and any co-sureties, or procured for the Principal by the Surety or Additional Sureties, whether such bonds, undertakings, contracts of suretyship, guaranties or indemnity are executed before or after the execution of this Agreement.

**Surety:** Any one or combination of the following: The Guarantee Company of North America USA, any person or entity joining with any of the aforesaid companies in executing any Bond, executing any Bond at their request or providing reinsurance to them with respect to any Bond and any subsidiaries, successors, and assigns thereof.

**Contract:** Any agreement between or among Principal and any one or more parties other than the Surety, together with all associated documents, including but not limited to general and special conditions, specifications, drawings, schedules and/or CPMs, whether or not the Surety has executed or procured the execution of any Bond in connection therewith.

**Event of Default:** Principal shall be deemed to be in default under this Agreement in the event of:
1. The failure of any Principal or Indemnitor to pay any premium to the Surety or to any agent of the Surety, including but not limited to additional premiums based on an overrun in contract price, when due or as demanded thereafter by the Surety;
2. The declaration by any Bond Obligee or Project Owner that any Principal is in default under any Contract;
3. Any abandonment, forfeiture, breach, failure, refusal or inability, whether actual or alleged, to perform any Contract, or any obligation contained therein;
4. A determination by the Surety, in its sole and absolute discretion, that the Principal's successful bid on a Bonded Contract was significantly lower than the bid of either or both of the next two (2) highest bidders;
5. Fails to pay, to the extent due in whole or in part, claims, bills or other indebtedness incurred in connection with the performance of any Contract;
6. Becomes the subject of any agreement or proceeding of liquidation or receivership, or actually becomes insolvent;
7. The initiation of any proceeding which materially deprives any Principal of the use of such Principal's plant, facilities, equipment, machinery, tools, supplies or materials;
8. If an individual sole proprietor dies, is adjudged mentally incompetent, is convicted of a felony or disappears and cannot be immediately found by Surety by use of usual methods;
9. The submission to the Surety or the Surety's agent by any Principal or Indemnitor of any information used by the Surety in the process of underwriting any Bond which is determined by the Surety, at any time, to be or to have been, materially false, incomplete, or misleading;

(GCNA Contract 1 – 2013)

10. Receipt of any information by the Surety or the existence of any facts relating to the financial condition of any Principal or Indemnitor which causes the Surety, in its sole and absolute discretion, to believe that such Principal or Indemnitor may be unable to perform or meet any of their obligations under this Agreement;

11. Breaches, fails to perform, or comply with, any provision of this Agreement.

**INDEMNITY TO SURETY:** Indemnitors agree to pay to Surety upon demand:

1. All loss, costs and expenses of whatsoever kind and nature, including court costs, attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Indemnitors to make arrangements for Surety's legal representation), in-house fees, consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of:
    a. Surety having executed, provided or procured any Bond;
    b. any Default under this Agreement by any of the Indemnitors;
    c. Surety enforcing any of the covenants or conditions of this Agreement;
    d. Surety conducting any investigation, obtaining or attempting to obtain a release, or recovering or attempting to recover loss or unpaid premium in connection with any Bonds; and/or
    e. Surety prosecuting or defending any action or claim in connection with any Bonds executed provided or procured on behalf of Principal or Indemnitors, whether Surety at its sole option elects to employ its own counsel, or permits or requires Indemnitors to make arrangements for Surety's legal representation. In addition the Indemnitors agree to pay Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement;

2. Any amount sufficient to discharge any claim made against Surety on any Bond, whether Surety will have made any payment or established any reserve therefor. Such payment shall be equal to the larger of (a) the amount of any reserve set by the Surety, or (b) such amount as the Surety, in its sole judgment, shall deem is sufficient to protect it from loss. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any Bond. Surety shall have no obligation to invest or provide a return on the funds deposited. The Indemnitors acknowledge that their failure to pay, immediately on demand, that sum demanded by Surety will cause irreparable harm for which Surety has no adequate remedy at law. The Indemnitors confirm and acknowledge that Surety is entitled to injunctive relief for specific enforcement of the foregoing provision.

3. Any original, additional or renewal premium due for any Bond.

**CLAIMS AGAINST THE SURETY:** With respect to claims against Surety, Indemnitors agree that:

1. Surety shall have the exclusive right for itself and the Indemnitors to determine in its sole and absolute discretion whether any claim or suit upon any bond shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed.

2. Surety may incur such expenses, including attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims and completion of any Contract with respect to which Surety has issued any Bond.

3. In the event of any payment of any kind by the Surety, the Indemnitors further agree that the liability of the Indemnitors shall extend to and include, and the Surety shall be entitled to charge and recover for, any and all disbursements made by it in good faith under the belief that:
    a. any Principal or Indemnitor is or has been in default under or pursuant to this Agreement;
    b. the Surety was or might be liable to pay the claims asserted or the sums paid, whether or not such liability actually existed; or
    c. such payments were or are necessary or expedient, in the Surety's sole and absolute discretion, to protect any of the Surety's rights or interests or to avoid or lessen the Surety's liability or alleged liability, whether or not such liability, necessity or expediency actually existed.

4. An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of the Indemnitors to Surety in any claim or suit by Surety against Indemnitors.

**SURETY'S REMEDIES IN EVENT OF DEFAULT:** In the event of an occurrence of an Event of Default, Surety, without notice to the Indemnitors, shall have the right, at its sole discretion, to:

1. Take possession of any part or all of the work under contracts secured by Bonds together with plant, machinery, equipment, job books and records, plans, drawings, tools, supplies or material wherever located and owned, leased or usable by Principal;

2. Assume all right, title and interest of the Principal or Indemnitors in and to all subcontracts and purchase orders, let or to be let, in connection with contracts secured by Bonds;

3. Assume all right, title and interest of Indemnitors in licenses, patents and copyrights which Surety deems necessary for completion of the contracts secured by Bonds;

 GUARANTEE

4. At the expense of Indemnitors, complete or arrange for completion or consent to the Obligee's completion of part or all of the work under contracts secured by Bonds;

5. Assert, pursue or prosecute, in its discretion, and at the expense of Indemnitors in the name of Principal or in the name of Surety, all claims of Principal against Obligees on Bonds or against any person, subcontractor, supplier, government or governmental agency arising or growing out of contracts or work done thereunder secured by Bonds executed, provided or procured by Surety. The authority and power to prosecute said claims shall include the authority to settle said claims or any part thereof on such terms as the Surety believes to be in Surety's best interest;

6. Arrange with the Obligees of the Bonds for the delivery of the consideration for the performance of the contracts, including, but not limited to, all money or property due or to become due including accounts receivable, progress payments, deferred payments, retained percentages, compensation for extra work and claims and the proceeds thereof directly to Surety, endorse checks, drafts, warrants or other instruments issued or paid by such Obligees and to apply the proceeds for the purpose of the trust provided below or for any other purpose which advances the Surety's rights of exoneration, indemnification and subrogation.

Indemnitors waive all notice of such default and the payment of any claim or of the making of any loan to Principal or Indemnitors by Surety. Should Indemnitors learn of any claim or suit against Principal, in which Surety may be held liable, Indemnitors shall give prompt notice to Surety of such claim or suit.

*Separate suits may be brought under this Agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety.*

**SECURITY TO SURETY:** As collateral security to Surety for the agreement of the Indemnitors to repay all loss and expense to Surety, whether heretofore of hereafter incurred, the Indemnitors:

1. Assign to Surety and grant a security interest to Surety in all rights of the Indemnitors in, or in any manner growing out of:

    a. all rights of the Indemnitors in all contracts referred to in the Bonds, or secured by the Bonds and all money or property due or to become due Indemnitors arising out of or in any way relating to contracts performed by Indemnitors, whether secured by Bonds executed by Surety or not, including, but not limited to, accounts receivable, progress payments, deferred payments, retained percentages, compensation for extra work and claims and the proceeds thereof;

    b. all rights of the Indemnitors in all contracts, including, but not limited to, unbonded contracts and/or contracts bonded by another surety, and all money or property due or to become due Indemnitors arising out of or in any way relating to such contracts, including, but not limited to, accounts receivable, progress payments, deferred payments, retained percentages, compensation for extra work and claims and the proceeds thereof;

    c. all the right, title and interest of the Indemnitors in and to all machinery, equipment, vehicles, rolling stock, materials, inventory, leaseholds, fuel, plant, tools, furniture, goods, and personal and fixture property;

    d. all money, cash, cash equivalents, bank accounts, deposit accounts (checking or savings), certificates of deposit, securities, bonds, negotiable instruments, instruments (including promissory notes), letter of credit rights, and all other investment property;

    e. all subcontracts and purchase orders on projects in connection with which the Indemnitors have entered into contracts secured by Bonds executed by Surety and all surety bonds, undertakings or guarantees which secure said subcontracts or purchase orders;

    f. all materials purchased for all contracts referred to in the Bonds, or secured by the Bonds, including material which is in the process of manufacture, in storage at any storage facility, or in transit to any project site;

    g. all licenses, patents, copyrights and trade secrets;

    h. all claims, causes of action, actions or demands and the proceeds thereof which Indemnitors may have against any subcontractor, vendor, materialman, owner, architect, engineer, accountant or others, whether arising out of contracts secured by Bond(s) executed by Surety or not;

    i. all money, claims or causes of actions due, claimed or receivable on insurance policies including life insurance proceeds, builder risk policies, fire policies and casualty policies;

    j. all warehouse receipts, bills of lading, general intangibles and farm products;

    k. all tax refunds or claims for tax refunds;

    l. all limited partnership and general partnership interests.

This ASSIGNMENT shall be effective as of the date of this Agreement but shall be enforceable only in the event of the occurrence of an Event of Default. The Indemnitors hereby authorize the Surety, at its option, to prosecute or enforce said assigned rights in the name of the Surety or in that of the Indemnitors and to endorse and to collect in the name of the Indemnitors or payee any checks, drafts, warrants or other instruments made or issued in payment of any such assigned



rights. Surety's exercise of any of its rights as a secured creditor under this Agreement shall not be a waiver of any of Surety's legal or equitable rights or remedies, including the Surety's rights of subrogation.

2. Irrevocably nominate and appoint any officer of Surety as the true and lawful attorney-in-fact of the Indemnitors, with full rights and authority in event of Principal's default to:
   a. sign the name of the Indemnitors to any voucher, release, satisfaction, check, bill of sale of property referred to herein, or any other paper or contract necessary or desired to carry into effect the purposes of this Agreement;
   b. dispose of performance of any Contract by subletting it in Principal's name or otherwise;
3. Authorize Surety to join any and all of the Indemnitors as parties defendant in any action, regardless of venue, against Surety on account of any Bond, and to enforce the obligations hereunder directly against any of the Indemnitors without the necessity of first proceeding against the Principal.
4. Agree that with respect to each specific contract secured by Bond executed, provided or procured by Surety on Principal's behalf, all money and property representing the consideration for the performance of the contract, (including, without limitation, the proceeds of claims for adjustments, additional compensation, compensation for the delay, extra work, change orders, insurance claims and all damage claims) whether in the possession of the Principal, Indemnitors or others and whether earned, unearned, paid, retained or to be paid shall be held in trust as trust funds for and shall be used solely for:
   a. the performance of the contract;
   b. the payment of obligations to subcontractors, laborers, and suppliers of materials and services incurred or to be incurred in the performance of the contract for which Surety is or may be liable under Bonds and;
   c. the satisfaction of Indemnitors' obligations to Surety under this Agreement and all other indebtedness and liabilities of Indemnitors to Surety.
5. Agree that this Agreement constitutes a security agreement and a financing statement in accordance with the provisions of the Uniform Commercial Code of every jurisdiction in which such Code is in effect. The Surety may make such additions to this Agreement as may be necessary or desirable to permit its filing as a financing statement under the Code, and the Indemnitors shall execute and deliver such further instruments as may be necessary or desirable to permit either the filing of this Agreement as a financing statement or the filing of a financing statement based upon this Agreement in such states, counties and other places as the Surety may deem necessary or desirable. The filing or recording of such document shall be solely at the option of the Surety, and the failure to do so shall not release or impair any of the obligations of the Indemnitors under this Agreement. Any copy of this Agreement certified as such by the Surety shall be considered an original for purposes of filing as a financing statement.

**GENERAL PROVISIONS:**
1. Assent by Surety to changes in any Contract or Bond or refusal to assent shall not release or affect the obligations of Indemnitors to Surety even though any such assent by the Surety does or might increase the liability of the Indemnitors.
2. Surety has the right to decline to execute, provide or procure any bond requested by Principal or Indemnitors. If Surety does execute, provide or procure the execution of a bid bond or proposal bond, or agrees or consents to provide such contract of suretyship, Surety retains the right to decline to execute the final bond (including, but not limited to, performance, payment or maintenance) that may be required in connection with any award that may be made under the bid proposal or tender to which the bid proposal bond or agreement or consent to provide such contract of suretyship is given.
3. Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration and the right of subrogation. The security interest, trust, and other rights granted herein will not be deemed a waiver of Surety's equitable subrogation rights or other rights, said security in rights being in addition to the rights of exoneration, subrogation, and other rights to which Surety is entitled to under law or in equity.
4. Until Surety shall have been furnished with the competent evidence of its discharge, without loss from any Bonds, Surety shall have the right to free access at reasonable times to the books, records and accounts of each of the Indemnitors for the purpose of examining, copying or reproducing them. Each one of the Indemnitors hereby authorizes any depositories in which funds of any of the Indemnitors may be deposited to furnish to Surety the amount of such deposits as of any date requested, and any legal entity doing business with the Indemnitors is authorized to furnish any information requested by Surety concerning any transaction. Surety may furnish in confidence copies of any information, which it now has or may hereafter obtain concerning each of the Indemnitors, to other persons or companies for the purpose of procuring co-suretyship or reinsurance or of advising interested persons or companies.
5. The Indemnitors will, on request of Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, the Indemnitors will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to Surety for the funding of the bonded obligations.
6. Indemnitors warrant that each of them is specifically and beneficially interested in the obtaining of each bond.
7. The addition to this Agreement of any Indemnitor, including any entities acquired after the date of execution of this Agreement, may be effected by written rider executed by such Indemnitor only, notwithstanding any language herein to the

GUARANTEE

contrary. The Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have heretofore or hereafter, with or without notice to or knowledge of the Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, from the Indemnitors or others. The rights, powers and remedies given the Surety under this Agreement shall be and are in addition to and not in lieu of, any and all other rights, powers and remedies which the Surety may have or acquire against the Indemnitors or others, whether by the terms of any agreement or by operation of law or otherwise.

8.  The Indemnitors waive and subordinate all rights of indemnity, subrogation and contribution each against the other until all obligations to the Surety under this Agreement, at law or in equity, have been satisfied in full.

9.  The Indemnitors hereby waive, to the extent provided by law, all rights to claim any of their property including their homesteads, as exempt from levy, sale, execution or other legal process.

10. The rights and remedies afforded to the Surety by the terms of this Agreement and the terms themselves may not be waived or modified orally. No Rider or Amendment to this Agreement shall be active until signed by an employee of the Surety.

11. This Agreement is to be liberally construed so as to protect, exonerate and indemnify the Surety. The invalidity of any provision of this Agreement by reason of the law of any state or by any other reason shall not affect the validity of any other provision of this Agreement, and the Indemnitors shall remain fully bound and liable hereunder to the Surety to the same extent as if the invalid provision had not existed.

12. All parties agree that any microfilmed, scanned or electronically digitized copy of this document made by Surety as part of its record storage and retention program shall be as effective as the original for all purposes. The Agreement, its riders and addends may be executed in separate counterparts, none of which need contain signatures of all parties, each of which shall be deemed an original, and all of which taken together constitute one and the same instrument.

13. The Indemnitors have relied upon their own due diligence in making their own independent appraisal of Principal and its business and financial condition, will continue to be responsible for making their own independent appraisal of such matters, and have not relied upon and will not hereafter rely upon Surety for information. Surety has no duty to inform any of the Indemnitors of the financial condition or other affairs related to Principal.

14. The Indemnitors shall remain responsible to Surety under this Agreement regardless of any changes in the relationship of the Indemnitors with Principal.

15. Wherever used in this instrument, the plural shall include the singular, the singular shall include the plural, and the neuter shall include both genders as the circumstances require.

16. Indemnitors agree to give written notice to the Surety of any anticipated change of more than ten percent in ownership or control of the Indemnitors.

17. The Indemnitors agree to submit themselves to personal jurisdiction in the State of Michigan, in whatever jurisdiction in which the Surety sustains or pays any loss for which the Indemnitors are liable hereunder and in whatever jurisdiction Surety may be sued as a consequence of its having issued any Bond. With respect to any action brought by the Surety on this Agreement in a jurisdiction in which one or more of the Indemnitors reside, are domiciled, are doing business or are found, each of the Indemnitors who are not in the jurisdiction hereby designates each of the Indemnitors in such jurisdiction as his agent to receive on his behalf service of process in such action.

**WAIVER OF TRIAL BY JURY:** The Indemnitors hereby waive trial by jury in any action or proceeding to which any or all of the Indemnitors and the Surety may be parties, arising out of or in any way pertaining to this Agreement. It is agreed and understood that this waiver constitutes a waiver of trial by jury of all claims against all parties to such actions or proceedings, including claims against parties who are not parties to this Agreement.

**TERMINATION: This Agreement is a continuing obligation of the Indemnitors unless terminated as provided in this paragraph. An Indemnitor desiring to terminate liability as to future Bonds of Principal must:**

1.  Give written notice to Surety at The Guarantee Company of North America USA, One Towne Square, Ste. 1470, Southfield, Michigan 48076, by certified or registered mail, of such termination;

2.  State in such notice the effective date (not less than thirty days after the receipt of notice by Surety) of termination of such Indemnitor's liability for future Bonds.

3.  It is understood and agreed that oral notice to or constructive notice to any agent or employee of Surety shall not constitute effective notice of termination under this agreement.

After the effective date of termination, the Indemnitor giving notice shall be liable hereunder for:

1.  Bonds executed or authorized prior to such date, and renewals and extension thereof;

2.  Bonds executed pursuant to a bid or proposal bond executed or authorized prior to such date, and renewals and extensions thereof.

Such termination of liability as to an Indemnitor shall in no way affect the obligation of any other Indemnitor who has not given notice as herein provided.



**REPRESENTATIONS:**   EACH OF THE INDEMNITORS REPRESENTS TO THE SURETY THAT HE HAS CAREFULLY READ THE ENTIRE AGREEMENT AND THAT THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN, OR, TO THE EXTENT SUCH OTHER AGREEMENTS OR UNDERSTANDINGS EXIST, THEY ARE HEREBY SUPERSEDED BY THIS AGREEMENT.

## ENTITY INDEMNITOR ACKNOWLEDGEMENT

Entity Name: A4Construction Company, Inc.

BY:

Name: Amy M. Anderson        Title: President

Address: 8805 S. Sandy Parkway, Sandy, Utah 84070

Entity Tax ID #:        87-0677995

STATE OF Utah, COUNTY OF Salt Lake:

On January 20, 2016, before me, Kathryn Allen,
(insert name and title of notary/officer)
personally appeared        Amy M. Anderson        , who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Utah that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature:        (SEAL)

> Notary Public
> **KATHRYN AVERY**
> Commission #604693
> My Commission Expires
> March 21, 2016
> State of Utah

## INDIVIDUAL INDEMNITOR ACKNOWLEDGEMENT

BY:

Name: Amy M. Anderson

Address: 13078 S. Canbury Circle, Draper, Utah 84020

Social Security #: 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

STATE OF Utah, COUNTY OF Salt Lake:

On January 20, 2016, before me, Kathryn Allen,
(insert name and title of notary/officer)
personally appeared        Amy M. Anderson        , who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Utah that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature:        (SEAL)

> Notary Public
> **KATHRYN AVERY**
> Commission #604693
> My Commission Expires
> March 21, 2016
> State of Utah

 

## INDIVIDUAL INDEMNITOR ACKNOWLEDGEMENT

BY: _____

Name:  Shawn M. Anderson

Address:  13078 S. Canbury Circle, Draper, Utah 84020

Social Security #:  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

STATE OF _Utah_, COUNTY OF _Salt Lake_

On _January 29 2016_, before me, _Kathryn Avery_

(insert name and title of notary/officer)

personally appeared _Shawn M. Anderson_, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _Utah_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature: _____   (SEAL)

Notary Public
KATHRYN AVERY
Commission #604693
My Commission Expires
March 21, 2016
State of Utah

**EXHIBIT B**

Confidential

# TEAMING AGREEMENT

## Between

## A4 CONSTRUCTION COMPANY, INC.

### And

## PERRY AND ASSOCIATES

This Teaming Agreement is made and entered into effective the 29th day of April 2019, by and between A4 Construction Company, Inc. (hereinafter "A4 Construction" or "PRIME CONTRACTOR") a Utah corporation, located at 8805 South Sandy Parkway, Sandy, Utah 84070 and Perry & Associates, Inc. (hereinafter "Perry & Assoc" or "TEAM SUBCONTRACTOR"), a Utah corporation, located at 17 E. Winchester Street, Suite 200, Murray, UT 84107. PRIME CONTRACTOR and TEAM SUBCONTRACTOR together are hereinafter referred to as "Teaming Parties".

This Teaming Agreement concerns the submission of a proposal to the Client noted below in response to Client's contemplated Request for Proposal (hereinafter "RFP"):

Client: US Army Corps of Engineers, Omaha District (hereinafter "Client" or "USACE")
RFP/Solicitation Number: W9128F-19-R-0005
Contract Award Number: W9128F-19-C-0016
RFP Services: SOF Mountaineering Facility, Fort Carson, CO (the "Facility")

WHEREAS, it is anticipated that the Client will issue a competitive RFP referenced above to award a Prime Contract to qualified small businesses to perform the construction of the Facility (hereinafter "SERVICES"); and

WHEREAS, the Teaming Parties, have determined it is in their collective best interest to team together in order to provide the Client the SERVICES as described in the RFP; and

WHEREAS, the Teaming Parties hereto, having carefully assessed their mutual capabilities and interests, have concluded that it is desirable to enter into a Teaming Agreement for the necessary work to be performed for the Client per the RFP; and

WHEREAS, the Teaming Parties have determined that each party has unique necessary expertise required to perform the SERVICES, and that this Teaming Agreement will enable each party to complement each other, thereby offering Client the optimum combination of capabilities to perform the SERVICES in the most efficient and effective manner; and

WHEREAS, PRIME CONTRACTOR, in exchange for TEAM SUBCONTRACTOR's agreement to be an exclusive Subcontractor to PRIME CONTRACTOR, and to provide other services to the PRIME CONTRACTOR as outlined in this Teaming Agreement, TEAM SUBCONTRACTOR agrees not to submit a separate proposal with other small businesses in response to the RFP, and the Teaming Parties agree, in the event that PRIME CONTRACTOR is awarded the contract to utilize TEAM SUBCONTRACTOR to perform the SERVICES as described in **Exhibit A.**

WHEREAS, it is the purpose of this Teaming Agreement to set forth the agreements and understandings under which the Teaming Parties will work together and perform the subsequent work for the awarded project.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and the forbearance of each party to respond to the solicitation independently, the Teaming Parties hereto agree as follows:

ARTICLE 1 - Prime/Subcontractor Roles. It is agreed that PRIME CONTRACTOR will be the Prime Contractor and that TEAM SUBCONTRACTOR will be a Subcontractor in the awarded project. PRIME CONTRACTOR is relying upon additional resources and expertise of TEAM SUBCONTRACTOR to provide work (including but not limited to accounting, booking and accounting related labor, consulting services on the construction of the Facility and other matters as may be agreed from time to time ) adequate to achieve the intended project outcomes. All

Page 1 of 8

Confidential

Work provided by TEAM SUBCONTRACTOR shall be of first-class workmanship in accordance with all then-current best professional industry standards and in compliance with all laws, regulations, statutes and implementing ordinances, and in strict accordance with all requirements of the Contract Documents.

If awarded the contract subject to this Teaming Agreement, Prime Contractor agrees to notify TEAM SUBCONTRACTOR by telephone call and followed by electronic means which will contain the full RFP Award. In the event that this Agreement is executed following the date that the RFP Award has been extended to PRIME CONTRACTOR, this Agreement shall be deemed to have been executed prior thereto to the extent necessary to give full effect to the executory provisions contemplated between the Parties herein.

ARTICLE 2 - Allocation of Responsibility/Submission of Proposal. PRIME CONTRACTOR shall take principal charge of reviewing and submitting the proposal prepared and assembled jointly by the PRIME CONTRACTOR and by the TEAM SUBCONTRACTOR. Teaming Parties shall share in the preparation of the proposal text in response to the RFP and performing the work as a result of the Prime Contract consistent with the mutually agreed upon share presented in **Exhibit A**. Teaming Parties shall jointly designate a Proposal Manager.

ARTICLE 3 - Scope of Effort/Submission of Materials. **Exhibit A** sets forth the division of work and responsibility between PRIME CONTRACTOR and TEAM SUBCONTRACTOR. Cost and pricing data will be submitted in accordance with applicable Solicitation and FAR procurement requirements. The Teaming Parties agree to provide cost and/or pricing data to the Proposal Manager as necessary to develop and submit the proposal to comply with the subcontractor cost evaluation requirements that may be set forth in the Client's RFP. All cost and/or pricing data will be handled as proprietary information as defined in ARTICLE 10.

ARTICLE 4 - Participation. Unless and until this Agreement terminates as provided herein, the Teaming Parties shall not submit a proposal in response to the RFP outside of the terms of this Agreement. However, it is understood that nothing contained herein shall be deemed to restrict the Teaming Parties from quoting, offering to sell, or selling to others any items or services that it may regularly offer for sale, even though such items or services may be included in the proposal.

ARTICLE 5 - Solicitation of Employees. The Teaming Parties agree that during the term of this Agreement and any resulting Prime Contract, it shall not directly solicit or recruit the employees of the other companies associated with the performance of this Agreement or the Services required under the awarded Prime Contract.

ARTICLE 6 - Form of Agreement. This Agreement does not constitute a partnership, joint venture, or any other form of business association. The relationship between Teaming Parties shall be that of a prime contractor/subcontractor arrangement, except specific limited agency granted to the TEAM SUBCONTRACTOR to act on behalf of the PRIME CONTRACTOR as expressly provided in writing or by this Teaming Agreement. The TEAM SUBCONTRACTOR agrees to comply with all prime contract flow down requirements and to be bound to PRIME CONTRACTOR to the extent that PRIME CONTRACTOR is bound to the Client. The PRIME CONTRACTOR is not an agent of TEAM SUBCONTRACTOR. The TEAM SUBCONTRACTOR will be a limited agent of the PRIME CONTRACTOR if expressly provided in writing or by this Agreement, only as it relates to the SERVICES contemplated in this Teaming Agreement. It is not the intent of this agreement that proposal costs incurred by PRIME CONTRACTOR or TEAM SUBCONTRACTOR either during the procurement or after a Contract is awarded will be shared by PRIME CONTRACTOR or TEAM SUBCONTRACTOR. The Teaming Parties shall abide by all Small Business Administration regulations, including limitations on subcontracting, 13 CFR 125.6, in the performance of the project.

ARTICLE 7. Prime Contractor/Team Subcontractor Relationship. TEAM SUBCONTRACTOR, as an inducement to assist the PRIME CONTRACTOR in the procurement and performance of this work, shall provide advice, assistance and oversight in the execution of the project. PRIME CONTRACTOR shall give reasonable consideration to such advice, assistance and oversight in its execution of the contract.

ARTICLE 8 - Subcontract of Work. In the event that PRIME CONTRACTOR is awarded a contract in response to the proposal submitted in response to the RFP, PRIME CONTRACTOR will subcontract to TEAM SUBCONTRACTOR the work, according to the proposed schedule (**Exhibit A**).

ARTICLE 9 . Indemnification and Compensation Matter. As an added inducement to TEAM SUBCONTRACTOR to enter into this exclusive Teaming Agreement, PRIME CONTRACTOR agrees to indemnify and hold TEAM SUBCONTRACTOR harmless from any and all claims submitted against its payment and performance bonds issued

Page 2 of 8

Confidential

pursuant to the prime contract. Furthermore, the Teaming Parties agree to prosecute the Work in strict adherence to the budgets jointly developed and approved by the Teaming Parties and shall seek and obtain written consent of both Teaming Parties in varying the budgets during the course of the Work of construction of the Facility. 49% of all profits realized from the prosecution of and completion of the Work and the construction of the Facility shall be paid to the TEAM SUBCONTRACTOR. This profit sharing provision is an express requirement for the willingness of the TEAM SUBCONTRACTOR to agree to execute this Agreement and perform its portion of the Work as agreed herein. It is also a prerequisite to the willingness of TEAM SUBCONTRACTOR to execute and perform as a surety on the performance bonding required in the performance of the Work and construction of the Facility.

ARTICLE 10 - Proprietary Information. Unless otherwise agreed, the Teaming Parties shall maintain information acquired from the other, from the Client, or prepared under this Agreement in confidence; provided however, that said obligation of confidentiality should not apply to information that is:

1) already in the public domain,
2) learned from a third party not in breach of any confidentiality obligation,
3) already known without restriction by the party receiving it at the time of disclosure, or
4) required by regulation (e.g., FAR 52.227-14), court or regulatory order to be disclosed.

Other than a limited right of use consistent with the intent and purposes of this Agreement, no right or license to the other under any trademark, trade secret, patent, or copyright is either granted or implied by the transmittal of any proprietary matter to either Teaming Party.

In the preparation of this Proposal and negotiation of any resulting Contract or Subcontract it may be necessary for each party to this agreement to provide proprietary information to each other. In such event, the disclosure and use of all proprietary data shall be in accordance with **Exhibit B**, hereto.

This Agreement shall not preclude any party from making disclosures of proprietary matters to Client as part of the proposal; provided, however, that any such matters disclosed or delivered to Client shall be appropriately marked with restrictive materials in accordance with applicable Client requirements. It is further understood that either Teaming Party, upon notifying the others, may disclose to any of its subsidiaries, in connection with the effort contemplated by this Agreement, any matter made available by the disclosing other party under this Agreement, provided that each subsidiary, prior to such disclosure shall have to agree to be bound by the provisions of this Article.

Any notice, demand or request required or permitted by this Teaming Agreement shall be in writing and shall be deemed to have been sufficiently made when personally delivered, e-mailed with a confirmation receipt or certified and postage prepaid addressed, to the individuals set forth below. Any information of a proprietary or confidential nature not addressed in writing and marked and submitted as required in **Exhibit B** will not fall under the protection of this Agreement. All proprietary information and all copies thereof shall be returned to the disclosing party upon written request. The designated points of contact are:

For PRIME CONTRACTOR:
Contractual Matters: Shawn Anderson (801) 518-8490, sanderson@a4construction.com
Technical Matters: Bruce Rosenlof (801) 703-1465, brosenlof@a4construction.com

For TEAM SUBCONTRACTOR:
Contractual Matters: Chris Jepsen (801) 264-8800, cjepsen@perryhomesutah.com
Legal Matters: William Perry (801) 264-8800, woperry@perryhomesutah.com

Article 11 - Exclusivity. While this Agreement is in effect, the Teaming Parties will not submit any offer for all or any part of the Project, to Client or any other person, or team with any other persons or companies relative to the Project, without the other Teaming Party's written consent. Provided, a) this Agreement shall in no manner prevent either Teaming Party from pursuing work for any current or potential client, and associating with any other persons or companies for such purposes, so long as the contemplated work or association does not involve, or create a conflict of interest for, the Project, and b) with joint agreement between the Teaming Parties, other firms may be added to the Proposal team (as other team subcontractors or otherwise) as it deems desirable in order to win award of the Project.

Confidential

ARTICLE 12 - Publicity. It is the intent of the Teaming Parties to have this Agreement as confidential until submittal of the Proposal to the Client. Any news release, public announcement, advertisement, or publicity proposed to be released by the Teaming Parties concerning this agreement, the involvement of the Teaming Parties under the Prime Contract, or its efforts in connection with the Proposal or any resulting Subcontract will be subject to the combined written approval of Teaming Parties and of the Client if so required, prior to release.

Article 13 - Trademarks, Patents or Copyrights. No license to either Teaming Party, under any trademark, patent, or copyright is either granted or implied by the conveying of information by either Teaming Party to each other. None of the information that may be submitted or exchanged by the respective Teaming Parties shall constitute any representation, warranty, assurance, guarantee, or inducement by either Teaming Party to the other with respect to the infringement of trademarks, patents, copyrights, or any right of privacy or other rights of third persons.

ARTICLE 14 - Term and Termination. Except as expressly provided in **Exhibit A**, all rights and obligations of the Teaming Parties under this Agreement shall terminate upon the occurrence of any of the following:

1) Upon release and review of the Government RFP, either party may voluntarily terminate this Agreement with the exception of Article 11 unless, mutually agreed upon by both parties.
2) Failure of the Client to award a task order in response to proposals to the RFP within one year from the execution of this Agreement or cancellation by Client of either its RFP, or the requirements for the portion of the Prime Contract allocated to either Teaming Party under this Agreement;
3) Award of a contract for the "SERVICES" to a contractor other than PRIME CONTRACTOR; or
4) Refusal of Client to approve TEAM SUBCONTRACTOR for the portion of the Prime Contract allocated to the TEAM SUBCONTRACTOR as represented in **Exhibit A**, notwithstanding PRIME CONTRACTOR's efforts to secure such approval;
5) Expiration of the term of two (2) years following the date hereof, unless such term is extended by mutual agreement;
6) Mutual agreement of the Teaming Parties to terminate this Agreement
7) A material breach by either Teaming Party of any of the provisions contained herein. Upon termination of this Agreement, both Teaming Parties shall, within 60 days of termination, if requested, return to the other all writings that reflect or embody proprietary matter in either parties' possession or control.
8) The suspension or debarment by the U.S. Government of either Party
9) Insolvency or Bankruptcy of either Party
10) Material Breach by either Party of this Agreement.

ARTICLE 15 - Force Majeure. Neither Teaming Party shall hold the other responsible for damages or delays in performance caused by force majeure, acts of God, or other events beyond the control of the other that could not have been reasonably foreseen and prevented.

ARTICLE 16 - Warranty. The Teaming Parties warrant that each has the right to enter into this Agreement and fully perform all obligations undertaken. PRIME CONTRACTOR will provide a Corporate Resolution, or similar document, authorizing this Teaming Agreement and designating TEAM SUBCONTRACTOR as its exclusive subcontractor for this project.

The Teaming Parties warrant that the data, information, and other material furnished to the other does not infringe any third party rights in any U.S. patent, copyright, or trade secret.

ARTICLE 17 - Limitation of Remedies. Except for Article 13 Trademarks, Patents or Copyrights, in no event shall Teaming Parties be liable to the other for any loss of profits; any special, exemplary, or consequential damages.

ARTICLE 18 - Assignment. Neither Teaming Party shall assign its interests, duties or obligations hereunder in full or in part without the prior written consent of the other.

ARTICLE 19 - Governing Law. This Agreement shall be governed in accordance with the laws of the State of Utah.

ARTICLE 20 - Procurement Integrity. The Teaming Parties agree that they and their employees will comply fully with the provisions of the Procurement Integrity Act (PIA) as set forth in Federal Acquisition Regulations and as amended.

Confidential

ARTICLE 21 - Disputes. In the event a dispute arises concerning a question of fact applicable to this Teaming Agreement, the disputed item shall be reduced to writing and addressed to the designated points of contact as identified in Article 10. The representatives shall work together to resolve disputes. As to any dispute or controversy between the Parties arising out of this Agreement which cannot be resolved by good faith negotiation involving senior management of the Parties, it shall be resolved in accordance with specified rules of the American Arbitration Association, before three arbitrators in a given location. In any such dispute, the prevailing party shall be entitled to receive, as part of any award or judgment, its reasonable attorneys' fees and expert witnesses' fees incurred in handling the dispute.

ARTICLE 22 - Integrated Writing and Enforceability. This Agreement constitutes the final and complete repository of the agreements between the Teaming Parties relating to the subject matter hereof and supersedes all prior or contemporaneous communications, representations, or agreements, whether oral or written. Modifications of this Agreement shall not be binding unless made in writing and signed by the authorized representative of Teaming Parties. The provisions of this Agreement shall be enforced to the fullest extent permitted by law. If any provision of this Agreement is found to be invalid or unenforceable, the provision shall be construed and applied in a way that comes as close as possible to expressing the intention of Teaming Parties with regard to the provisions and that saves the validity and enforceability of the provision.

PRIME CONTRACTOR AND TEAM SUBCONTRACTOR ACKNOWLEDGE that there has been an opportunity to negotiate the terms and conditions of this Agreement and agree to be bound accordingly.

A4 Construction Company, Inc.

Signature

Shawn Anderson
Printed Name

Project Executive
Title

April 29, 2019
Date of Signature

Perry & Associates, Inc.

Signature

William O. Perry, IV
Printed Name

Vice President & General Counsel
Title

April 29, 2019
Date of Signature

End of Section

Confidential

## EXHIBIT A

Client: US Army Corps of Engineers, Omaha District (hereinafter "Client" or "USACE")
RFP/Solicitation Number:  W9128F-19-R-0005
Contract Award Number:  W9128F-19-C-0016
RFP Services: SOF Mountaineering Facility, Fort Carson, CO

This **Exhibit A** is incorporated by reference and made a part of the Teaming Agreement between A4 Construction Company, Inc. (hereinafter "A4 Construction" or "PRIME CONTRACTOR") and Perry & Associates (hereafter referred to as "Perry & Associates" or "TEAM SUBCONTRACTOR"), dated *April 29, 2019* and together referred to as the "Teaming Parties".

This **Exhibit A** sets forth the agreed upon sharing arrangements between Teaming Parties in anticipation of the Teaming Parties developing and submitting a proposal to *USACE* in response to their RFP referenced above.

Based on overall contractual requirements and subsequent task order requirements, PRIME CONTRACTOR will provide the following:

- On Site Project Management, including but not limited to:
  - Assignment and control of on-site personnel
  - Control of other non-management on-site personnel
- Self performed work as needed for compliance with the project requirements
- Scheduling, sequencing, procurement, and all other services normally attributed to a prime contractor for the SERVICES
- Payment and Performance Bond for the Project
- Construction and deliver of the Facility in accordance with all applicable legal requirements

PRIME CONTRACTOR subcontracts with TEAM SUBCONTRACTOR to provide the following:

- Assistance with Project Services Financial Accounting and Costing Control, including but not limited to:
  - Setting up and management of Project Services bank account
  - Processing the payment of all costs related to the Project
  - Preparing Monthly (or other period) financial reports distributed to the Parties
  - Management of cash flow and distribution of profits to the Parties
  - Other reasonable construction oversight related tasks as requested by PRIME CONTRACTOR and agreed by TEAM SUBCONTRACTOR

- Indemnification for Bonding
- Other non-construction related services as mutually agreed upon

This subcontract arrangement contemplated includes an allocation to the TEAM SUBCONTRACTOR of 49% of the anticipated profit related to the Services provided to the Client under this Teaming Agreement.

End of Section

# PERRY & ASSOCIATES, INC.

April 30, 2019

VIA HAND DELIVERY

Shawn Anderson
A4 Construction, Inc.
Draper, UT 84020

RE:    Teaming Agreement ("Teaming Agreement") Between A4 Construction, Inc., ("A4") and Perry & Associates, Inc. ("Perry") for Project Located in Forth Carson, CO (the "Project")

Dear Mr. Anderson:

Reference is made to the Teaming Agreement, all capitalized terms not otherwise defined in this letter shall have the meanings ascribed thereto in the Teaming Agreement. Pursuant to the Teaming Agreement, Perry and A4 agreed to an arrangement whereby Perry would provide certain assistance to A4 in its construction of the Project. This Letter is meant to further define certain matters between the Parties in their performance of the Teaming Agreement and the construction of the Project.

During the prosecution of the Work and the performance of the Teaming Agreement resulting in the completion of the Project, the Parties agree that the following shall apply:

1) A joint bank account in A4's name shall be established where all funds received from the Client shall be deposited during the prosecution of the work (the "Bank Account"). The Bank Account shall require the signatures of both an authorized representative of Perry and A4 for any disbursements from the account. The Bank Account shall be used to pay all subcontractors and suppliers in the prosecution of the Work. No funds related to the prosecution of the Work under any relevant agreement shall be funneled through any account other than the Bank Account.

2) Perry shall perform the accounting functions associated with the contract, the Teaming Agreement and the prosecution of the Work. This includes without limitation the processing and payment of invoices (which shall be approved by both Perry and A4), submitting to the Client for reimbursement all expenditures associated with the project, and preparing summaries of construction expenses at the Project in accordance with the budget associated with the Project.

3) The Parties agree that the budget shall not be varied without the prior written consent of both Parties. Furthermore, each of Perry and A4 shall only be reimbursed their actual expended overhead costs from working on the Project (notwithstanding any budgeted amounts to the contrary) and payment of overhead related expenses shall only occur after such expenses have been reviewed and approved by both Perry and A4 from time to time.

4) The Parties agree that the profits resulting from the completion of the Project shall be split 49% to Perry and 51% to A4.

5) The Parties agree during the process of completing the Project to exclusively work together towards the memorialization of a more permanent joint venture or similar arrangement, whereby the Parties might pursue additional similar opportunities in the future.

This Letter shall be deemed to augment the Teaming Agreement and shall be a legally binding agreement enforceable against both Parties. In the event of any conflict between this Letter and the Teaming Agreement, the provisions of this Letter shall govern in all respects. This Letter shall be interpreted in accordance with the laws of the State of Utah and enforceable in the courts of said state. Please manifest your agreement with the provisions of this Letter by execution below.

Very truly yours,

PERRY & ASSOCIATES, INC.

By: _____
Name: William O. Perry, IV
Its:    Vice President & General Counsel

AGREED AND ACCEPTED

A4 CONSTRUCTION, INC.

By: _____
Name: Shawn Anderson
Title:    Vice President

**EXHIBIT C-1**


THE
GUARANTEE

## RIDER

This Rider shall be attached to and form part of the General Agreement of Indemnity made and entered into by A4 Construction Company, Inc.; Amy M. Anderson & Shawn M. Anderson (A4 Construction Indemnitors) in favor of the Surety, dated ___January___ _20__, _2016_ as may have been amended from time to time, (hereinafter "Agreement"). It is hereby agreed that:

> The Surety hereby acknowledges and agrees that Perry & Associates, Inc. (Perry) shall only be liable to the Surety for those losses associated with the bond referenced below. Perry shall have no additional liability to the Surety on any others losses associated with a bond written on behalf of A4 Construction Indemnitors as named Principal, unless Perry, by separate Rider, agrees to assume liability under the referenced General Agreement of Indemnity as to that specific bond.

Pursuant to the General Agreement of Indemnity dated ___January 20th___, 2016, ___Perry & Associates, Inc.___ agrees to be also bound by the above referenced Agreement as to any loss associated with the described Bond:

| | |
|---|---|
| Bond No.: | 11166727 |
| Principal: | A4 Construction Company, Inc. |
| Obligee: | The United States of America |
| Project: | Contract No. W9128F-19-C-0016 – Construction of SOF Mountaineering Facility, FT. Carson, CO |
| Penal Sum: | $8,794,325 |

### ENTITY INDEMNITOR ACKNOWLEDGEMENT

Entity Name: ___Perry & Associates, Inc.___

BY: _____

Name: ___William Perry IV___   Title: ___Vice President & General Counsel___

Entity Tax ID #: ██████████

STATE OF _UTAH_____, COUNTY OF _SALT LAKE__ :

On _April 30, 2019_____, before me, ___SANDY ALLRED___,
(insert name and title of notary/officer)

personally appeared ___William Perry IV___, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___UTAH___ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature: ___Sandy Allred___  (SEAL)

**SANDY ALLRED**
NOTARY PUBLIC-STATE OF UTAH
COMMISSION# 692663
COMM. EXP. 12-29-2020

(GCNA Specific Bond Rider – 2013)

# EXHIBIT C-2



## RIDER

This Rider shall be attached to and form part of the General Agreement of Indemnity made and entered into by A4 Construction Company, Inc.; Amy M. Anderson & Shawn M. Anderson (A4 Construction Indemnitors) in favor of the Surety, dated ___January___ _20_ , _2016_ as may have been amended from time to time, (hereinafter "Agreement"). It is hereby agreed that:

> The Surety hereby acknowledges and agrees that Perry & Associates, Inc. (Perry) shall only be liable to the Surety for those losses associated with the bond referenced below. Perry shall have no additional liability to the Surety on any others losses associated with a bond written on behalf of A4 Construction Indemnitors as named Principal, unless Perry, by separate Rider, agrees to assume liability under the referenced General Agreement of Indemnity as to that specific bond.

Pursuant to the General Agreement of Indemnity dated ___January 20th___ , 2016, __Perry & Associates, Inc.__ agrees to be also bound by the above referenced Agreement as to any loss associated with the described Bond:

| | |
|---|---|
| Bond No.: | 11166730 |
| Principal: | A4 Construction Company, Inc. |
| Obligee: | The United States of America |
| Project: | Contract No. W9128F19C0018 – SOF Human Performance Training Center, PN 79447 (FY19) Fort Carson, Colorado |
| Penal Sum: | $13, 239, 533 |

### ENTITY INDEMNITOR ACKNOWLEDGEMENT

Entity Name: ___Perry & Associates, Inc.___

BY: _____

Name: __William Perry IV__          Title: __Vice President & General Counsel__

Entity Tax ID #: ███████████

STATE OF __UTAH__ , COUNTY OF __SALT LAKE__ :

On __MAY 20, 2019__ , before me, __Sandy Allred__ ,
(insert name and title of notary/officer)
personally appeared _____William Perry IV_____ , who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of __UTAH__ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature: __Sandy Allred__          (SEAL)

SANDY ALLRED
NOTARY PUBLIC·STATE OF UTAH
COMMISSION# 692669
COMM. EXP. 12-29-2020

(GCNA Specific Bond Rider – 2013)

# EXHIBIT D-1

| **PERFORMANCE BOND** (See instructions on reverse) Bond No. 11166727 | DATE BOND EXECUTED (Must be same or later than date of contract) 04/30/2019 | **OMB Control Number: 9000-0045** **Expiration Date: 7/31/2019** |
|---|---|---|

Paperwork Reduction Act Statement - This information collection meets the requirements of 44 USC § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number. The OMB control number for this collection is 9000-0045. We estimate that it will take 60 minutes to read the instructions, gather the facts, and answer the questions. Send only comments relating to our time estimate, including suggestions for reducing this burden, or any other aspects of this collection of information to: General Services Administration, Regulatory Secretariat Division (M1V1CB), 1800 F Street, NW, Washington, DC 20405.

| PRINCIPAL (Legal name and business address) A4 Construction Company, Inc. 8805 South Sandy Parkway Sandy, UT 84070 | TYPE OF ORGANIZATION ("X" one) ☐ INDIVIDUAL  ☐ PARTNERSHIP  ☐ JOINT VENTURE ☑ CORPORATION  ☐ OTHER (Specify) STATE OF INCORPORATION Utah |
|---|---|

| SURETY(IES) (Name(s) and business address(es)) The Guarantee Company of North America USA One Towne Square, Suite 1470 Southfield, MI 48086 | PENAL SUM OF BOND |||||
|---|---|---|---|---|---|
| | MILLION(S) 8 | THOUSAND(S) 794 | HUNDRED(S) 325 | CENTS 00 |
| | CONTRACT DATE 04/19/2019 | CONTRACT NUMBER W9128F-19-C-0016 W9128F-19-R-0005 ||||

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The Principal has entered into the contract identified above.

THEREFORE:

The above obligation is void if the Principal-

(a)(1) Performs and fulfills all the understanding, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice of the Surety(ies) and during the life of any guaranty required under the contract, and

(2) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.

(b) Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to 41 USC Chapter 31, Subchapter III, Bonds, which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

WITNESS:

The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

| **PRINCIPAL** |||||
|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | 3. | |

| **INDIVIDUAL SURETY(IES)** ||||
|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. | (Seal) |
| NAME(S) (Typed) | 1. | 2. | |

| **CORPORATE SURETY(IES)** |||||
|---|---|---|---|---|
| SURETY A | NAME & ADDRESS | The Guarantee Company of North America USA One Towne Square, Suite 1470, Southfield, MI 48086 | STATE OF INCORPORATION MI | LIABILITY LIMIT ($) 18,995,000 | Corporate Seal |
| | SIGNATURE(S) | 1. [signature] | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Kathy Avery, Attorney-In-Fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is NOT usable

**STANDARD FORM 25 (REV. 8/2016)**
Prescribed by GSA-FAR (48 CFR) 53.228(b)

CORPORATE SURETY(IES) *(Continued)*

| | | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | |
|---|---|---|---|---|---|
| **SURETY B** | NAME & ADDRESS | | | | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY C** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY D** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY E** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY F** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY G** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

| BOND PREMIUM ▶ | RATE PER THOUSAND ($) 15/10/8.50/8.0/7.0 | TOTAL ($) 93,372.00 |
|---|---|---|

## INSTRUCTIONS

1. This form is authorized for use in connection with Government contracts. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitations listed therein. The value put into the LIABILITY LIMIT block is the penal sum (i.e., the face value) of bonds, unless a co-surety arrangement is proposed.

(b) When multiple corporate sureties are involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identifier corresponding to each of the sureties. Moreover, when co-surety arrangements exist, the parties may allocate their respective limitations of liability under the bonds, provided that the sum total of their liability equals 100% of the bond penal sum.

(c) When individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety shall accompany the bond. The government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

**STANDARD FORM 25** (REV. 8/2016) BACK

| PAYMENT BOND<br>*(See instructions on reverse)*<br>Bond No.  11166727 | DATE BOND EXECUTED *(Must be same or later than date of contract)*<br><br>04/30/2019 | OMB Control Number: 9000-0045<br>Expiration Date: 7/31/2019 |
|---|---|---|

Paperwork Reduction Act Statement - This information collection meets the requirements of 44 USC § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number. The OMB control number for this collection is 9000-0045. We estimate that it will take 60 minutes to read the instructions, gather the facts, and answer the questions. Send only comments relating to our time estimate, including suggestions for reducing this burden, or any other aspects of this collection of information to: General Services Administration, Regulatory Secretariat Division (M1V1CB), 1800 F Street, NW, Washington, DC 20405.

| PRINCIPAL *(Legal name and business address)*<br><br>A4 Construction Company, Inc.<br>8805 South Sandy Parkway<br>Sandy, UT 84070 | TYPE OF ORGANIZATION *("X" one)*<br><br>☐ INDIVIDUAL   ☐ PARTNERSHIP   ☐ JOINT VENTURE<br>☑ CORPORATION   ☐ OTHER *(Specify)*<br><br>STATE OF INCORPORATION<br>Utah |
|---|---|

| SURETY(IES) *(Name(s) and business address(es))*<br><br>The Guarantee Company of North America USA<br>One Towne Square, Suite 1470<br>Southfield, MI 48086 | PENAL SUM OF BOND |||||
|---|---|---|---|---|
| | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| | 8 | 794 | 325 | 00 |
| | CONTRACT DATE<br><br>04/19/2019 | CONTRACT NUMBER<br>W9128F-19-C-0016<br>W9128F-19-R-0005 |||

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| | PRINCIPAL ||| |
|---|---|---|---|---|
| SIGNATURE(S) | 1.<br>(Seal) | 2.<br>(Seal) | 3.<br>(Seal) | Corporate<br>Seal |
| NAME(S) &<br>TITLE(S)<br>*(Typed)* | 1. | 2. | 3. | |

| | INDIVIDUAL SURETY(IES) || |
|---|---|---|---|
| SIGNATURE(S) | 1.<br>(Seal) | 2. | (Seal) |
| NAME(S)<br>*(Typed)* | 1. | 2. | |

| | CORPORATE SURETY(IES) |||||
|---|---|---|---|---|---|
| SURETY A | NAME &<br>ADDRESS | The Guarantee Company of North America USA<br>One Towne Square, Suite 1470, Southfield, MI 48086 | STATE OF INCORPORATION<br>MI | LIABILITY LIMIT<br>$18,995,000 | Corporate<br>Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) &<br>TITLE(S)<br>*(Typed)* | 1. Kathy Avery, Attorney-In-Fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION<br>*Previous edition is NOT usable*

STANDARD FORM 25A (REV. 8/2016)<br>Prescribed by GSA-FAR (48 CFR) 53.2228(c)

**CORPORATE SURETY(IES)** *(Continued)*

| | | | STATE OF INCORPORATION | LIABILITY LIMIT $ | |
|---|---|---|---|---|---|
| **SURETY B** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY C** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY D** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY E** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY F** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY G** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under 40 USC Chapter 31, Subchapter III, Bonds. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitations listed therein. The value put into the LIABILITY LIMIT block is the penal sum (i.e., the face value) of the bond, unless a co-surety arrangement is proposed.

(b) When multiple corporate sureties are involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identifier corresponding to each of the sureties. Moreover, when co-surety arrangements exist, the parties may allocate their respective limitations of liability under the bonds, provided that the sum total of their liability equals 100% of the bond penal sum.

(c) When individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

**STANDARD FORM 25A** (REV. 8/2016) **BACK**



**THE GUARANTEE®**

**The Guarantee Company of North America USA**
Southfield, Michigan

**NOW ALL BY THESE PRESENTS**: That **THE GUARANTEE COMPANY OF NORTH AMERICA USA**, a corporation organized and existing under the laws of the State of Michigan, having its principal office in Southfield, Michigan, does hereby constitute and appoint

### David Evans, Ryan Falk, Ryan Banasky, Rod Madsen, Kathy Avery, Scott Lifferth

### Banasky Insurance, Inc.

its true and lawful attorney(s)-in-fact to execute, seal and deliver for and on its behalf as surety, any and all bonds and undertakings, contracts of indemnity and other writings obligatory in the nature thereof, which are or may be allowed, required or permitted by law, statute, rule, regulation, contract or otherwise.

The execution of such instrument(s) in pursuance of these presents, shall be as binding upon **THE GUARANTEE COMPANY OF NORTH AMERICA USA** as fully and amply, to all intents and purposes, as if the same had been duly executed and acknowledged by its regularly elected officers at the principal office.

The Power of Attorney is executed and may be certified so, and may be revoked, pursuant to and by authority of Article IX, Section 9.03 of the By-Laws adopted by the Board of Directors of **THE GUARANTEE COMPANY OF NORTH AMERICA USA** at a meeting held on the 31st day of December, 2003. The President, or any Vice President, acting with any Secretary or Assistant Secretary, shall have power and authority:

1. To appoint Attorney(s)-in-fact, and to authorize them to execute on behalf of the Company, and attach the Seal of the Company thereto, bonds and undertakings, contracts of indemnity and other writings obligatory in the nature thereof; and
2. To revoke, at any time, any such Attorney-in-fact and revoke the authority given, except as provided below
3. In connection with obligations in favor of the Florida Department of Transportation only, it is agreed that the power and authority hereby given to the Attorney-in-Fact includes any and all consents for the release of retained percentages and/or final estimates on engineering and construction contracts required by the State of Florida Department of Transportation. It is fully understood that consenting to the State of Florida Department of Transportation making payment of the final estimate to the Contractor and/or its assignee, shall not relieve this surety company of any of its obligations under its bond.
4. In connection with obligations in favor of the Kentucky Department of Highways only, it is agreed that the power and authority hereby given to the Attorney-in-Fact cannot be modified or revoked unless prior written personal notice of such intent has been given to the Commissioner – Department of Highways of the Commonwealth of Kentucky at least thirty (30) days prior to the modification or revocation.

Further, this Power of Attorney is signed and sealed by facsimile pursuant to resolution of the Board of Directors of the Company adopted at a meeting duly called and held on the 6th day of December 2011, of which the following is a true excerpt:

RESOLVED that the signature of any authorized officer and the seal of the Company may be affixed by facsimile to any Power of Attorney or certification thereof authorizing the execution and delivery of any bond, undertaking, contracts of indemnity and other writings obligatory in the nature thereof, and such signature and seal when so used shall have the same force and effect as though manually affixed.

IN WITNESS WHEREOF, **THE GUARANTEE COMPANY OF NORTH AMERICA USA** has caused this instrument to be signed and its corporate seal to be affixed by its authorized officer, this 1st day of March, 2018.

**THE GUARANTEE COMPANY OF NORTH AMERICA USA**

**STATE OF MICHIGAN**
**County of Oakland**

**Stephen C. Ruschak, President & Chief Operating Officer**

**Randall Musselman, Secretary**

On this 1st day of March, 2018 before me came the individuals who executed the preceding instrument, to me personally known, and being by me duly sworn, said that each is the herein described and authorized officer of The Guarantee Company of North America USA; that the seal affixed to said instrument is the Corporate Seal of said Company; that the Corporate Seal and each signature were duly affixed by order of the Board of Directors of said Company.

*Cynthia A. Takai*
*Notary Public, State of Michigan*
*County of Oakland*
**My Commission Expires February 27, 2024**
*Acting in Oakland County*

IN WITNESS WHEREOF, I have hereunto set my hand at The Guarantee Company of North America USA offices the day and year above written.

*Cynthia A. Takai*

I, Randall Musselman, Secretary of **THE GUARANTEE COMPANY OF NORTH AMERICA USA**, do hereby certify that the above and foregoing is a true and correct copy of a Power of Attorney executed by **THE GUARANTEE COMPANY OF NORTH AMERICA USA**, which is still in full force and effect.

IN WITNESS WHEREOF, I have thereunto set my hand and attached the seal of said Company this 30 day of APRIL, 2019

**Randall Musselman, Secretary**

# EXHIBIT D-2

| PERFORMANCE BOND<br>(See instructions on reverse)<br>Bond No.   11166730 | DATE BOND EXECUTED (Must be same or later than date of contract)<br><br>05/21/2019 | OMB Control Number: 9000-0045<br>Expiration Date: 7/31/2019 |
|---|---|---|

Paperwork Reduction Act Statement - This information collection meets the requirements of 44 USC § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number. The OMB control number for this collection is 9000-0045. We estimate that it will take 60 minutes to read the instructions, gather the facts, and answer the questions. Send only comments relating to our time estimate, including suggestions for reducing this burden, or any other aspects of this collection of information to: General Services Administration, Regulatory Secretariat Division (M1V1CB), 1800 F Street, NW, Washington, DC 20405.

**PRINCIPAL** (Legal name and business address)

A4 Construction Company, Inc.
PO BOX 1673
Draper, UT 84020

**TYPE OF ORGANIZATION** ("X" one)

☐ INDIVIDUAL   ☐ PARTNERSHIP   ☐ JOINT VENTURE
☒ CORPORATION   ☐ OTHER (Specify)

STATE OF INCORPORATION
Utah

**SURETY(IES)** (Name(s) and business address(es))

The Guarantee Company of North America USA
One Towne Square, Suite 1470
Southfield, MI 48086

**PENAL SUM OF BOND**

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 12 | 309 | 817 | 00 |

| CONTRACT DATE | CONTRACT NUMBER |
|---|---|
| 05/03/2019 | W9128F19C0018 |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The Principal has entered into the contract identified above.

**THEREFORE:**

The above obligation is void if the Principal-

(a)(1) Performs and fulfills all the understanding, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice of the Surety(ies) and during the life of any guaranty required under the contract, and

(2) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.

(b) Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to 41 USC Chapter 31, Subchapter III, Bonds, which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

**WITNESS:**

The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

**PRINCIPAL**

| | 1. | 2. | 3. |
|---|---|---|---|
| SIGNATURE(S) | (Seal) | (Seal) | (Seal) |
| NAME(S) & TITLE(S) (Typed) | Shawn Anderson<br>VP | 2. | 3. |

**INDIVIDUAL SURETY(IES)**

| | 1. | 2. |
|---|---|---|
| SIGNATURE(S) | (Seal) | (Seal) |
| NAME(S) (Typed) | 1. | 2. |

**CORPORATE SURETY(IES)**

| SURETY A | NAME & ADDRESS | The Guarantee Company of North America USA<br>One Towne Square, Suite 1470, Southfield, MI 48086 | STATE OF INCORPORATION<br>MI | LIABILITY LIMIT ($)<br>18,995,000 | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Kathy Avery, Attorney-In-Fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is NOT usable

STANDARD FORM 25 (REV. 8/2016)
Prescribed by GSA-FAR (48 CFR) 53.228(b)

## CORPORATE SURETY(IES) (Continued)

| | | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | |
|---|---|---|---|---|---|
| **SURETY B** | NAME & ADDRESS | | | | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY C** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY D** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY E** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY F** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY G** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT ($) | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

| BOND PREMIUM ▶ | RATE PER THOUSAND ($) 12/8/7/6.5 | TOTAL ($) 87,014.00 |
|---|---|---|

## INSTRUCTIONS

1. This form is authorized for use in connection with Government contracts. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitations listed therein. The value put into the LIABILITY LIMIT block is the penal sum (i.e., the face value) of bonds, unless a co-surety arrangement is proposed.

   (b) When multiple corporate sureties are involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identifier corresponding to each of the sureties. Moreover, when co-surety arrangements exist, the parties may allocate their respective limitations of liability under the bonds, provided that the sum total of their liability equals 100% of the bond penal sum.

   (c) When individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety shall accompany the bond. The government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

**STANDARD FORM 25** (REV. 8/2016) **BACK**

| PAYMENT BOND (See instructions on reverse) Bond No. 11166730 | DATE BOND EXECUTED (Must be same or later than date of contract) 05/21/2019 | OMB Control Number: 9000-0045 Expiration Date: 7/31/2019 |
|---|---|---|

Paperwork Reduction Act Statement - This information collection meets the requirements of 44 USC § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number. The OMB control number for this collection is 9000-0045. We estimate that it will take 60 minutes to read the instructions, gather the facts, and answer the questions. Send only comments relating to our time estimate, including suggestions for reducing this burden, or any other aspects of this collection of information to: General Services Administration, Regulatory Secretariat Division (M1V1CB), 1800 F Street, NW, Washington, DC 20405.

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) |
|---|---|
| A4 Construction Company, Inc. PO BOX 1673 Draper, UT 84020 | ☐ INDIVIDUAL   ☐ PARTNERSHIP   ☐ JOINT VENTURE ☑ CORPORATION   ☐ OTHER (Specify) |
| | STATE OF INCORPORATION Utah |

| SURETY(IES) (Name(s) and business address(es)) | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| The Guarantee Company of North America USA One Towne Square, Suite 1470 Southfield, MI 48086 | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| | 12 | 309 | 817 | 00 |
| | CONTRACT DATE 05/03/2019 | CONTRACT NUMBER W9128F19C0018 | | |

## OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit is indicated, the limit of liability is the full amount of the penal sum.

## CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

## WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

### PRINCIPAL

| | 1. | 2. | 3. |
|---|---|---|---|
| SIGNATURE(S) | (Seal) | (Seal) | (Seal) |
| NAME(S) & TITLE(S) (Typed) | 1. Shawn Anderson VP | 2. | 3. |

### INDIVIDUAL SURETY(IES)

| | 1. | 2. |
|---|---|---|
| SIGNATURE(S) | (Seal) | (Seal) |
| NAME(S) (Typed) | 1. | 2. |

### CORPORATE SURETY(IES)

| SURETY A | NAME & ADDRESS | The Guarantee Company of North America USA One Towne Square, Suite 1470, Southfield, MI 48086 | STATE OF INCORPORATION MI | LIABILITY LIMIT $18,995,000 | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Kathy Avery, Attorney-In-Fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is NOT usable

STANDARD FORM 25A (REV. 8/2016)
Prescribed by GSA-FAR (48 CFR) 53.2228(c)

**CORPORATE SURETY(IES) *(Continued)***

### SURETY B

| | | STATE OF INCORPORATION | LIABILITY LIMIT $ | |
|---|---|---|---|---|
| NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

### SURETY C

| | | STATE OF INCORPORATION | LIABILITY LIMIT $ | |
|---|---|---|---|---|
| NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

### SURETY D

| | | STATE OF INCORPORATION | LIABILITY LIMIT $ | |
|---|---|---|---|---|
| NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

### SURETY E

| | | STATE OF INCORPORATION | LIABILITY LIMIT $ | |
|---|---|---|---|---|
| NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

### SURETY F

| | | STATE OF INCORPORATION | LIABILITY LIMIT $ | |
|---|---|---|---|---|
| NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

### SURETY G

| | | STATE OF INCORPORATION | LIABILITY LIMIT $ | |
|---|---|---|---|---|
| NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under 40 USC Chapter 31, Subchapter III, Bonds. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitations listed therein. The value put into the LIABILITY LIMIT block is the penal sum (i.e., the face value) of the bond, unless a co-surety arrangement is proposed.

   (b) When multiple corporate sureties are involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identifier corresponding to each of the sureties. Moreover, when co-surety arrangements exist, the parties may allocate their respective limitations of liability under the bonds, provided that the sum total of their liability equals 100% of the bond penal sum.

   (c) When individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

**STANDARD FORM 25A** (REV. 8/2016) BACK



**The Guarantee Company of North America USA**
Southfield, Michigan

NOW ALL BY THESE PRESENTS: That **THE GUARANTEE COMPANY OF NORTH AMERICA USA**, a corporation organized and existing under the laws of the State of Michigan, having its principal office in Southfield, Michigan, does hereby constitute and appoint

## David Evans, Ryan Falk, Ryan Banasky, Rod Madsen, Kathy Avery, Scott Lifferth

## Banasky Insurance, Inc.

its true and lawful attorney(s)-in-fact to execute, seal and deliver for and on its behalf as surety, any and all bonds and undertakings, contracts of indemnity and other writings obligatory in the nature thereof, which are or may be allowed, required or permitted by law, statute, rule, regulation, contract or otherwise.

The execution of such instrument(s) in pursuance of these presents, shall be as binding upon **THE GUARANTEE COMPANY OF NORTH AMERICA USA** as fully and amply, to all intents and purposes, as if the same had been duly executed and acknowledged by its regularly elected officers at the principal office.

The Power of Attorney is executed and may be certified so, and may be revoked, pursuant to and by authority of Article IX, Section 9.03 of the By-Laws adopted by the Board of Directors of **THE GUARANTEE COMPANY OF NORTH AMERICA USA** at a meeting held on the 31st day of December, 2003. The President, or any Vice President, acting with any Secretary or Assistant Secretary, shall have power and authority:

1. To appoint Attorney(s)-in-fact, and to authorize them to execute on behalf of the Company, and attach the Seal of the Company thereto, bonds and undertakings, contracts of indemnity and other writings obligatory in the nature thereof; and
2. To revoke, at any time, any such Attorney-in-fact and revoke the authority given, except as provided below
3. In connection with obligations in favor of the Florida Department of Transportation only, it is agreed that the power and authority hereby given to the Attorney-in-Fact includes any and all consents for the release of retained percentages and/or final estimates on engineering and construction contracts required by the State of Florida Department of Transportation. It is fully understood that consenting to the State of Florida Department of Transportation making payment of the final estimate to the Contractor and/or its assignee, shall not relieve this surety company of any of its obligations under its bond.
4. In connection with obligations in favor of the Kentucky Department of Highways only, it is agreed that the power and authority hereby given to the Attorney-in-Fact cannot be modified or revoked unless prior written personal notice of such intent has been given to the Commissioner – Department of Highways of the Commonwealth of Kentucky at least thirty (30) days prior to the modification or revocation.

Further, this Power of Attorney is signed and sealed by facsimile pursuant to resolution of the Board of Directors of the Company adopted at a meeting duly called and held on the 6th day of December 2011, of which the following is a true excerpt:

RESOLVED that the signature of any authorized officer and the seal of the Company may be affixed by facsimile to any Power of Attorney or certification thereof authorizing the execution and delivery of any bond, undertaking, contracts of indemnity and other writings obligatory in the nature thereof, and such signature and seal when so used shall have the same force and effect as though manually affixed.

IN WITNESS WHEREOF, **THE GUARANTEE COMPANY OF NORTH AMERICA USA** has caused this instrument to be signed and its corporate seal to be affixed by its authorized officer, this 1st day of March, 2018.

THE GUARANTEE COMPANY OF NORTH AMERICA USA

Stephen C. Ruschak, President & Chief Operating Officer

Randall Musselman, Secretary

**STATE OF MICHIGAN**
**County of Oakland**

On this 1st day of March, 2018 before me came the individuals who executed the preceding instrument, to me personally known, and being by me duly sworn, said that each is the herein described and authorized officer of The Guarantee Company of North America USA; that the seal affixed to said instrument is the Corporate Seal of said Company; that the Corporate Seal and each signature were duly affixed by order of the Board of Directors of said Company.

*Cynthia A. Takai*
*Notary Public, State of Michigan*
*County of Oakland*
*My Commission Expires February 27, 2024*
*Acting in Oakland County*

IN WITNESS WHEREOF, I have hereunto set my hand at The Guarantee Company of North America USA offices the day and year above written.

*Cynthia A. Takai*

I, Randall Musselman, Secretary of **THE GUARANTEE COMPANY OF NORTH AMERICA USA**, do hereby certify that the above and foregoing is a true and correct copy of a Power of Attorney executed by **THE GUARANTEE COMPANY OF NORTH AMERICA USA**, which is still in full force and effect.

IN WITNESS WHEREOF, I have thereunto set my hand and attached the seal of said Company this 2) day of May, 2019

Randall Musselman, Secretary

# EXHIBIT E



**DEPARTMENT OF THE ARMY**
CORPS OF ENGINEERS, OMAHA DISTRICT
1616 CAPITOL AVENUE
OMAHA NE 68102-4901

January 14, 2022

CENWO-CT-M (Rawe)                                    Serial Letter No. C-0036

A4 Construction Co.
  Attn: Mr. Shawn Anderson
8805 S Sandy Parkway
Sandy, UT 84070-6407
sanderson@a4construction.com

        Re:     Termination for Default
                Contract No. W9128F19C0016
                Special Operations Mountaineering Facility
                Fort Carson, Colorado

Mr. Anderson:

You are hereby notified that effective immediately A4 Construction (A4) is terminated for default as prime contractor for Contract No. W9128F19C0016 pursuant to FAR 52.249-10, Default (Fixed-Price Construction) for failing to complete the project by the extended contract completion date of 11 December 2021. A4 has failed to provide compelling reasons why this contract should not be terminated for default by presenting excusable reasons or other facts bearing on the issues. The delay in completing the work did not arise from unforeseeable causes beyond the control and without the fault or negligence of both A4 and its subcontractors or suppliers. After considering alternatives to termination, and the factors outlined in FAR 49.402-3(f), I have determined that terminating the contract for default is in the Government's best interest.

The original completion date for this contract was 31 May 2021. The contract completion date (CCD) was extended several times via contract modifications R00003, R00004, R00006, R00007, R00009, R00010 and R00011. Modification R00011 extended the contract completion date to 11 December 2021.

A4 submitted its November 2021 schedule update on 17 December 2021, reflecting a substantial project completion date of 15 July 2022, which is 216 days after the CCD of 11 December 2021. The critical path progresses through vestibule close-in (framing, sheathing, air barrier, hang drywall), electrical work for permanent power, and commissioning. Critical path activity Frame Vestibule (EX2020) has a scheduled start date of 01-DEC-2021, but it has not begun. Subsequent critical path activity start dates also have been surpassed for Sheath Vestibule (EX2030 – 13-DEC-2021), Air Barrier Vestibule (EX2040 - 20-DEC-2021) and Hang Drywall (A10080 – 27-DEC-2021). These facts place the project no less than 37 days beyond your contract completion on 15-JUL-2022, identified in your latest schedule.

Building Dry-In (Activity PM2000) is identified as having a scheduled completion of 23-DEC-2021, yet it is not complete. Temporary dry-in measures at the vestibule, windows, and doors have allowed snow intrusion into interior spaces. This fact threatens to increase the risk of rework associated with interior activities. Additionally, multiple door and glazing submittals have not yet been submitted despite being necessary to begin/complete permanent dry-in measures.

In addition to the above issues, as indicated below, multiple near-critical activities have surpassed

SUBJECT:  Contract No. W9128F19C0016, SOF Mountaineering Facility, Ft Carson, CO
**(Termination for Default)**

their scheduled start and/or finish dates.  Many of the dates were surpassed prior to the schedule's run date of 15-DEC-2021 and the schedule's submission date of 17-DEC-2021 (November Update / Data Date 01-DEC-2021 / Run Date 15-DEC-2021).

Mountaineering Area
*A10050 – Metal Stud Framing / Scheduled Completion 13-DEC-2021 / Incomplete.
*A10010 – Overhead Mech Piping / Scheduled Completion 16-DEC-2021 / Incomplete
*A10030 – OH Plumbing Rough / Scheduled Completion 14-DEC-2021 / Incomplete
*A10060 – In Wall Elec Rough / Scheduled Completion 17-DEC-2021 / Incomplete
*A10070 – In Wall Plumbing Rough / Scheduled Completion 17-DEC-2021 / Not Started
*A10040 – OH Fire Sprinkler / Scheduled Completion 17-DEC-2021 / Not Started

Elec / Mech Rooms
*A10820 – Set Mechanical Equip / Scheduled Completion 08-DEC-2021 / Not Started
*A10870 – Mechanical Duct / Scheduled Completion 14-DEC-2021 / Incomplete
*A10900 – Test Mechanical Duct / Scheduled Completion 16-DEC-2021 / Not Started
*A10880 – Insulate Duct / Scheduled Completion 21-DEC-2021 / Not Started

Classroom
*A10460 – Metal Stud Framing / Scheduled Completion 03-DEC-2021 / Incomplete.
*A10980 – Overhead Mech Piping / Scheduled Completion 09-DEC-2021 / Incomplete
*A10440 – OH Plumbing Rough / Scheduled Completion 09-DEC-2021 / Incomplete
*A10450 – OH Fire Sprinkler/ Scheduled Completion 17-DEC-2021 / Not Started
*A10470 – In Wall Elec Rough / Scheduled Completion 04-DEC-2021 / Incomplete
*A10480 – In Wall Plumbing Rough / Scheduled Completion 04-DEC-2021 / Incomplete
*A10490 – Hang Drywall / Scheduled Completion 15-DEC-2021 / Not Started
*A10520 – Tape & Finish / Scheduled Completion 23-DEC-2021 / Not Started
*A10570 – Painting / Scheduled Completion 30-DEC-2021 / Not Started

Your right to proceed further under this contract is terminated. You shall take the following steps regarding the cessation of work and notification to immediate subcontractors:

(1)  Stop all work, make no further shipments, and place no further orders relating to the contract.

(2)  Keep adequate records of your compliance with subparagraph (1), above, of this section showing the –

(i)  Date you received the Notice of Termination;

(ii)  Effective date of the termination; and

(iii)  Extent of completion of performance on the effective date.

(3)  Furnish notice of termination to each immediate subcontractor and supplier that will be affected by this termination.  In the notice-

(i)  Specify your Government contract number;

(ii)  State that the contract has been terminated completely;

SUBJECT:  Contract No. W9128F19C0016, SOF Mountaineering Facility, Ft Carson, CO
**(Termination for Default)**

(iii)    Provide instructions to stop all work, make no further shipments, place no further orders, and terminate all subcontracts under the contract.

(iv)    Provide instruction to submit any settlement proposal promptly; and

(v)    Request that similar notices and instructions be given to its immediate subcontractors.

(4)  Notify the Contracting Officer of all pending legal proceedings that are based on subcontracts or purchase orders under the contract.  Also, promptly notify the Contracting Officer of any such proceedings that are filed after receipt of the Notice.

(5)  Take any other action required by the Contracting Officer or under the Termination clause in the contract.

You are instructed to contact Ms. Heather Duggan, Rocky Mountain Area Engineer, at (402) 996-3700 or Heather.L.Duggan@usace.army.mil no later than two (2) business days after receipt of this letter to obtain Government instructions regarding construction materials, equipment, and demobilization.

You remain liable to your subcontractors and suppliers for proposals arising because of the termination of their subcontractors or orders.  You are requested to settle these proposals as promptly as possible.  For purposes of reimbursement by the Government, settlements will be governed by the provisions of FAR Part 49.

The Government shall not be liable to A4 for any amount for supplies or services not accepted, therefore you are not entitled to any additional payment under the subject contract.  The U.S. Army Corps of Engineers reserves all rights and remedies provided by law or under the contract, in addition to charging reprocurement costs in accordance with FAR 52.249-10(a), which states, "If the Contractor refuses or fails to prosecute the work or any separable part, with the diligence that will insure its completion within the time specified int his contract including any extension, or fails to complete the work within this time, the Government may, by written notice to the Contractor, terminate the right to proceed with the work (or the separable part of the work) that has been delayed. In this event, the Government may take over the work and complete it by contract or otherwise, and may take possession of and use any materials, appliances, and plant on the work site necessary for completing the work.  The Contractor and its sureties shall be liable for any damage to the Government resulting from the Contractor's refusal or failure to complete the work within the specified time, whether or not the Contractor's right to proceed with the work is terminated.  This liability includes any increased costs incurred by the Government in completing the work."

This is the final decision of the Contracting Officer.  You may appeal this decision to the Armed Services Board of Contract Appeals, Skyline Six, 5109 Leesburg Pike, 7th Floor, Falls Church, Virginia 22041-3208.  If you decide to appeal, you must mail or otherwise furnish written notice thereof to the Armed Services Board of Contract Appeals within 90 days from the date you receive this decision.  A copy thereof shall be furnished to the Contracting Officer from whose decision the appeal is taken.  The notice shall indicate that an appeal is intended and identify the contract by number.  The notice shall also include a copy of this decisions.  With regard to appeals to the Armed Services Board of Contract Appeals, you may, solely at your election, proceed under the Board's small claim procedure for claims of $50,000 ($150,000 for Small Business Concerns) or less, or its accelerated procedure for claims of $100,000 or less.  In lieu of appealing to the Armed Services

SUBJECT:  Contract No. W9128F19C0016, SOF Mountaineering Facility, Ft Carson, CO
**(Termination for Default)**

Board of Contract Appeals, you may bring an action directly in the United States Court of Federal Claims within 12 months of the date you receive this decision.

Should you have any questions regarding this notice, please contact Ms. Tracie Evans, Deputy Chief of Contracting, at (402) 995-2816 or Tracie.L.Evans@usace.army.mil or the undersigned at (402) 996-3722 or William.T.Rawe@usace.army.mil.

Respectfully,

William T. Rawe

Digitally signed by
RAWE.WILLIAM.THURBER.III.1156
638362
Date: 2022.01.14 10:57:40 -06'00'

William T. Rawe
Contracting Officer

CF:
COE: PM, AE, RE, PE, CRS, CR

CC:      Ms. Sara Corbello, Intact Insurance
         Mr. Conner Briggs, J.S. Held LLC
         Mr. John Dunlap, Dunlap Fiore, LLC

**EXHIBIT F**



**DEPARTMENT OF THE ARMY**
CORPS OF ENGINEERS, OMAHA DISTRICT
1616 CAPITOL AVENUE
OMAHA NE 68102-4901

March 28, 2022

CENWO-CT (McKensey)                                      Serial Letter No. C-0033

A4 Construction Co.
Attn: Mr. Shawn Anderson
8805 S Sandy Parkway
Sandy, UT 84070-6407
sanderson@a4construction.com

        Re:     Termination for Default
               Contract No. W9128F19C0018
               Special Operations Human Performance Training Facility
               Fort Carson, Colorado

Mr. Anderson:

You are hereby notified that effective immediately A4 Construction (A4) is terminated for default as prime contractor for Contract No. W9128F19C0018 pursuant to FAR 52.249-10, Default (Fixed-Price Construction) for failing to complete the project by the extended contract completion date of 04 March 2022. A4 has failed to provide compelling reasons why this contract should not be terminated for default as they have failed to present excusable reasons or other facts bearing on the issues. The delay in completing the work did not arise from unforeseeable causes beyond the control and without the fault or negligence of both A4 and its subcontractors or suppliers. After considering alternatives to termination, and the factors outlined in FAR 49.402-3(f), I have determined that terminating the contract for default is in the Government's best interest.

The original completion date for this contract was 31 May 2021. The contract completion date (CCD) was extended several times via contract modifications R00004, R10005, R00008, R00009, R00012, and R00013. Modification R00013 extended the contract completion date to 04 March 2022.

A4 submitted Serial Letter H-0023 (Show Cause Notice Response) dated 25 February 2022 which included an updated project schedule (Data Date: 01 January 2022 / Run Date: 25 February 2022) reflecting a substantial project completion date of 10 July 2022, which is 128 days after the CCD of 04 March 2022. This is a schedule slip of 45 days from the previously provided January schedule update submitted on 28 January 2022. The 10 July 2022 schedule completion is based on multiple near-term critical path activities finishing, including completion of electrical activity A10830 (Set Electrical Gear) on 6 January 2022. Activity A10830 (Set Electrical Gear) is incomplete. Follow-on critical path activities A10920 (Pull Wire to Gear) and A10930 (Terminate Wire to Gear) have an identified schedule completion of 11 March 2022. The actual completion date for Activities A10920 and A10930 is unknown as multiple submittals including the Cable Installation Plan & Procedures and Cable Installer Certifications have not been submitted to the Government. These submittals are required prior to scheduling the Preparatory Meeting necessary to pull and terminate the underground primary and secondary conductors. These facts indicate an ongoing day for day delay to the 10 July 2022 schedule completion identified by you in your Show Cause Notice Response dated 25 February 2022.

Following Serial Letter H-0023 (Show Cause Notice Response), A4 submitted the February 2022 Schedule Update (Data Date: 01 March 2022 / Run Date: 02 March 2022) on 2 March 2022 which also reflects a substantial completion on 10 July 2022, 128 days after the CCD. In the provided schedule, electrical activities associated with permanent power are no longer identified as critical as Activity A10830 (Set Electrical Gear) was assigned an actual completion date of 6 January 2022. As stated above, A10830 (Set Electrical Gear) is incomplete. Similarly, over fifteen other activities were updated with

SUBJECT:  Contract No. W9128F19C0018, SOF Human Performance Training Facility, Ft Carson, CO
**(Termination for Default)**

actual finish dates in the past which are currently incomplete as indicated below.

The following activities have been assigned actual completion dates in the February Schedule Update but have not finished (Data Date: 01 March 2022 / Run Date: 02 March 2022):

Activity ID /  Activity Name  / Completion Date Assigned /  Current Status
*A10110 - Low Voltage Wiring / 07-Jan-2022 A / Incomplete
*A10160 - In Hard Ceiling Electrical 05-Jan-2022 A / Incomplete
*A10830 - Set Electrical Gear / 06-Jan-2022 A / Incomplete
*A10990 - Submit/Approve Design Review Report 23 05 93 / 20-Jan-2022 A / Incomplete
*EX2120 - Overhead Door / 10-JAN-22 A / Incomplete
*SW1100 - Grade for Curb & Gutter / 04-Jan-2022 A / Incomplete
*SW1110 - Grade for Parking / 03-Jan-2022 A / Incomplete
*SW1130 - Grade for Sidewalk / 03-Jan-2022 A / Incomplete
*SW1050 - Site Electrical / 06-Jan-2022 A / Incomplete
*SW1250 - Site Communications Line / 07-Jan-2022 A / Incomplete
*SW1200 - Relocate Obstacle Course Stations / 05-Jan-2022 A / Incomplete
*SW1210 - Grade at Aggregate Track / 27-Jul-2020 A / Incomplete
*SW1220 - 6" Base Course Aggregate Track / 10-Jan-2022 A / Incomplete
*SW1290 - Tie In Gas / 03-Jan-2022 A / Incomplete
*SW1120 - Curb & Gutter / 21-Jan-2022 A / Incomplete
*SW1230 - 4" Structural Fill Aggregate Track / 17-Jan-2022 A / Incomplete
*SW1140 - Sidewalk / 11-Feb-2022 A / Incomplete
*SW1150 - Landscape Sleeving / 26-Jan-2022 A / Incomplete
*SW1160 - Topsoil / 28-Feb-2022 A / Incomplete

Additionally, many activities have surpassed their schedule completion date and are incomplete (Data Date: 01 March 2022 / Run Date: 02 March 2022):

Activity ID /  Activity Name  / Scheduled Completion Date /  Current Status
*A11010 – Submit/App Air Barrier Test Plan / Scheduled Completion 20-Nov-2020 / Incomplete
*A10970 – Submit/Approve Cx Agent Firm / Scheduled Completion 20-Dec-2021 / Incomplete
*A10980 – Submit/Approve TAB Agent Firm / Scheduled Completion 20-Dec-2021 / Incomplete
*A11000 - Submit/App Const. Comm. Plan / Scheduled Completion 06-Feb-2022 / Incomplete
*PM1110 - Building Dry-In / Scheduled Completion 14-Mar-2022 / Incomplete
*CTL1050 - Install Hook-Up AHU #3 / Scheduled Completion 15-Mar-2022 / Incomplete
*A10300 - Doors & Hardware / Scheduled Completion 27-Dec-2021 / Incomplete
*A10190 - Duct Drops / Scheduled Completion 08-MAR-2022 / Incomplete
*A10130 - Acoustical Ceiling Grid / Scheduled Completion 16-FEB-2022 / Incomplete
*A10860 - Pipe Insulation / Scheduled Completion 04-MAR-2022 / Incomplete
*A10180 - Light Fixtures / Scheduled Completion 01-MAR-2022 / Incomplete
*A10270 - Operable Wall / Scheduled Completion 04-MAR-2022 / Incomplete
*A11030 - Approve Pre-Func Checklist / Scheduled Completion 04-MAR-2022 / Incomplete
*A11060 - Air Barrier Testing / Scheduled Completion 01-MAR-2022 / Incomplete
*A10920 – Pull Wire To Gear / Scheduled Completion 11-MAR-2022 / Incomplete
*A10930 – Terminate Wire to Gear / Scheduled Completion 11-MAR-2022 / Incomplete
*A11170 – Test Electrical Gear/Panels / Scheduled Completion 18-MAR-2022 / Incomplete
*010M1 - Procure Install FFE CLIN0007 / Scheduled Completion 14-MAR-2022 / Incomplete
*EX2180 - Exterior Doors / Scheduled Completion 07-MAR-2022 / Incomplete
*EX2180 - Glazing / Scheduled Completion 14-MAR-2022 / Incomplete
*SW1240 - Turf at Aggregate Track / Scheduled Completion 25-AUG-2020 / Incomplete
*SW1300 - Submit Electrical Pull Plan / Scheduled Completion 14-Dec-2021 / Incomplete
*SW1380 - Approve Electrical Pull Plan / Scheduled Completion 30-Dec-2021 / Incomplete
*SW1160 - Top Soil / Scheduled Completion 28-Feb-2022 / Incomplete

SUBJECT: Contract No. W9128F19C0018, SOF Human Performance Training Facility, Ft Carson, CO
**(Termination for Default)**

Further, no submittals have been provided for the specification sections identified below which continue to prevent associated activities from starting:

01 33 29 SUSTAINABILITY REPORTING
01 91 00.15 TOTAL BUILDING COMMISSIONING
07 05 23 PRESSURE TESTING AN AIR BARRIER SYSTEM FOR AIR TIGHTNESS
12 50 00.13 10 FURNITURE AND FURNITURE INSTALLATION
23 05 93 TESTING, ADJUSTING, AND BALANCING FOR HVAC
23 09 00 INSTRUMENTATION AND CONTROL FOR HVAC
23 09 13 INSTRUMENTATION AND CONTROL DEVICES FOR HVAC
23 09 23.01 LONWORKS DIRECT DIGITAL CONTROL FOR HVAC
23 25 00 CHEMICAL TREATMENT OF WATER FOR MECHANICAL SYSTEMS
26 56 00 EXTERIOR LIGHTING
27 10 00 BUILDING TELECOMMUNICATION CABLING SYSTEMS
27 41 00 AUDIO AND VIDEO SYSTEMS
28 10 05 ELECTRONIC SECURITY SYSTEMS
32 11 20 BASE COURSE FOR RIGID AND SUBBASES FOR FLEXIBLE PAVING
32 11 30 LIME TREATED SUBGRADE
32 13 13.06 PORTLAND CEMENT CONCRETE PAVEMENT ROADS AND SITE
32 16 19 CONCRETE CURBS, GUTTERS AND SIDEWALKS
32 18 13 SYNTHETIC GRASS SURFACING
32 31 13 CHAIN LINK FENCES AND GATES
32 84 23 UNDERGROUND SPRINKLER SYSTEMS
32 92 19 SEEDING
32 93 00 EXTERIOR PLANTS
33 82 00 TELECOMMUNICATIONS OUTSIDE PLANT OSP

As identified above, submittals have not been provided for Testing, Adjusting, and Balancing (TAB) and Total Building Commissioning. When logic is incorporated into the February schedule to account for these outstanding submittals, and TAB is identified as a predecessor to PVT as required by 23 09 00 para 3.5.2, the schedule completion date of 10 July 2022 pushes into August 2022. Ongoing concerns with the lack of permanent power, building dry-in, missed completion dates, and high quantity of submittals that have not been provided to include potential long lead items such as OSP cabling, A/V equipment, security systems, and FF&E further jeopardize the schedule's completion date. The February 2022 Schedule Update (Data Date: 01 March 2022 / Run Date: 02 March 2022) is not accepted and the identified completion date is considered inaccurate and unrealistic.

Your right to proceed further under this contract is terminated. You shall take the following steps regarding the cessation of work and notification to immediate subcontractors:

(1) Stop all work, make no further shipments, and place no further orders relating to the contract.

(2) Keep adequate records of your compliance with subparagraph (1), above, of this section showing the –

    (i)      Date you received the Notice of Termination;

    (ii)     Effective date of the termination; and

    (iii)    Extent of completion of performance on the effective date.

(3) Furnish notice of termination to each immediate subcontractor and supplier that will be affected by this termination. In the notice-

SUBJECT:  Contract No. W9128F19C0018, SOF Human Performance Training Facility, Ft Carson, CO
**(Termination for Default)**

        (i)        Specify your Government contract number;

        (ii)       State that the contract has been terminated completely;

        (iii)     Provide instructions to stop all work, make no further shipments, place no further orders, and terminate all subcontracts under the contract.

        (iv)     Provide instruction to submit any settlement proposal Promptly; and

        (v)      Request that similar notices and instructions be given to its immediate subcontractors.

(4) Notify the Contracting Officer of all pending legal proceedings that are based on subcontracts or purchase orders under the contract. Also, promptly notify the Contracting Officer of any such proceedings that are filed after receipt of the Notice.

(5) Take any other action required by the Contracting Officer or under the Termination clause in the contract.

You are instructed to contact Ms. Heather Duggan, Rocky Mountain Area Engineer, at (402) 996-3700 or Heather.L.Duggan@usace.army.mil no later than two (2) business days after receipt of this letter to obtain government instructions regarding construction materials, equipment, and demobilization.

You remain liable to your subcontractors and suppliers for proposals arising because of the termination of their subcontractors or orders. You are required to settle these proposals as promptly as possible. For purposes of reimbursement by the Government, settlements will be governed by the provisions of FAR Part 49.

The Government shall not be liable to A4 for any amount for supplies or services not accepted, therefore you are not entitled to any additional payment under the subject contract. The U.S. Army Corps of Engineers reserves all rights and remedies provided by law or under the contract, in addition to charging re-procurement costs in accordance with FAR 52.249-10(a), which states, "If the Contractor refuses or fails to prosecute the work or any separable part, with the diligence that will insure its completion within the time specified in his contract including any extension, or fails to complete the work within this time, the Government may, by written notice to the Contractor, terminate the right to proceed with the work (or the separable part of the work) that has been delayed. In this event, the Government may take over the work and complete it by contract or otherwise, and may take possession of and use any materials, appliances, and plant on the work site necessary for completing the work. The Contractor and its sureties shall be liable for any damage to the Government resulting from the Contractor's refusal or failure to complete the work within the specified time, whether or not the Contractor's right to proceed with the work is terminated. This liability includes any increased costs incurred by the Government in completing the work."

This is the final decision of the Contracting Officer. You may appeal this decision to the Armed Services Board of Contract Appeals, Skyline Six, 5109 Leesburg Pike, 7th Floor, Falls Church, Virginia 22041-3208. If you decide to appeal, you must mail or otherwise furnish written notice thereof to the Armed Services Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose decision the appeal is taken. The notice shall indicate that an appeal is intended and identify the contract by number. The notice shall also include a copy of this decision. With regard to appeals to the Armed Services Board of Contract Appeals, you may, solely at your election, proceed under the Board's small claim procedure for claims of $50,000 ($150,000 for Small Business Concerns) or less, or its accelerated procedure for claims of $100,000 or less.  In lieu of appealing to the Armed Services Board of Contract Appels, you may bring an action directly in the United States Court of Federal Claims within 12 months of the date you receive this decision.

SUBJECT:  Contract No. W9128F19C0018, SOF Human Performance Training Facility, Ft Carson, CO
**(Termination for Default)**


      Should you have any questions regarding this notice, please contact Ms. Tracie Evans, Deputy Chief of Contracting, at (402) 995-2816 or tracie.l.evans@usace.army.mil or the undersigned at (402) 996-3708 or monica.a.mckensey@usace.army.mil.

Sincerely,

Digitally signed by Monica A.
McKensey
Date: 2022.03.28 07:33:25 -06'00'

Monica A. McKensey
Contracting Officer


CF:
COE: PM, AE, RE, PE, CRS, CR, Office of Counsel

CC:    Ms. Sara Corbello, Intact Insurance
       Mr. Conner Briggs, J.S. Held LLC
       Mr. John Dunlap, Dunlap Fiore, LLC