IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH,

CENTRAL DIVISON

| | |
|---|---|
| THE GUARANTEE COMPANY OF NORTH AMERICA USA, a corporation,<br><br>Plaintiff,<br><br>v.<br><br>A4 CONSTRUCTION COMPANY, INC., a Utah corporation; SHAWN M. ANDERSON, an individual; AMY M. ANDERSON, an individual; and PERRY & ASSOCIATES, INC., a Utah corporation,<br><br>Defendants. | **ORDER AND MEMORANDUM DECISION GRANTING IN PART RULE 60(b) MOTION**<br><br>Case No. 2:22-cv-00280-TC-DBP<br><br>District Judge Tena Campbell<br>Chief Magistrate Judge Dustin B. Pead |

Before the court is Plaintiff Guarantee Company of North America's (Guarantee) Rule 60(b) motion for relief from this court's order granting Defendant Perry and Associates' (Perry) Rule 56(d) motion. (Mot. for Relief, ECF No. 80.)

## BACKGROUND

Guarantee is the surety for Defendant A4 Construction Company, Inc. ("A4"). (ECF No. 24 at ¶ 3.) A4 is a general contractor on construction projects. (Id. ¶ 1.) In 2016, Surety and A4 entered an Agreement of General Indemnity (Indemnity Agreement). (Id. ¶ 3; see also Indemnity Agreement, ECF No. 24-3.) In 2019, the United States Army Corps of Engineers (USACE) awarded A4 contracts for two construction projects–the Mountaineering Project and the HPTC Project–at Fort Carson, Colorado (the Projects). (ECF No. 24 at ¶ 9.) Around the same time, A4 requested payment and performance bonds (Bonds) for the Projects from Guarantee. (Id. ¶ 10.) Also near that time, Perry executed and delivered riders to be attached to the Indemnity Agreement. (Id. ¶ 11.)[1]

---

[1] On the Projects, by way of a Teaming Agreement, A4 is the Prime Contractor and Perry is the Team Subcontractor. (Perry Answer, ECF No. 34 at ¶ 9 of Countercls.)

In 2022, USACE declared A4 to be in default of the Projects' contracts and terminated A4's right to continue work. (ECF No. 24 at ¶¶ 21, 34.) Because of Guarantee's obligations under the Bonds, USACE turned to Guarantee to arrange for the Projects' completion. (Id. ¶¶ 22–23, 35–36.) As a result, Guarantee has incurred costs and is subject to liability. (Id. ¶¶ 25–33, 37–45.)

Guarantee brings five claims against Defendants: (1) breach of Indemnity Agreement, (2) breach of fiduciary duty, (3) specific performance of Indemnity Agreement, (4) replevin, (5) injunctive[2] and quia timet relief. (Compl., ECF No. 2 at ¶¶ 66–119.)[3]

Guarantee filed a motion for partial summary judgment in June 2022. (ECF No. 24.) In its motion, Guarantee argued that A4 and Perry breached the Indemnity Agreement. (Id. at 17.)[4] Guarantee moved the court to order Defendants to hold it harmless from Bond claims as they have arisen, to pay Guarantee its out-of-pocket losses incurred to date, and to post sufficient collateral or security to protect Guarantee from all losses, costs, and expenses resulting from the claims against the Bonds. (Id. ¶ 46.) In response to Guarantee's demands, Perry wired $1.6 million into an escrow account. (Id. ¶ 47.) To date, A4 has not posted any collateral; Guarantee alleges A4 has sold or is trying to sell material identified as collateral under the Indemnity

---

[2] Guarantee later withdrew its motion for preliminary injunctive relief because of the availability of other appropriate remedies, such as specific performance requiring the Defendants to post sufficient collateral to protect Guarantee from future losses. (See Suppl. Mot. Partial Summ. J., ECF No. 53 at 6.)

[3] Perry filed a crossclaim against A4 and a counterclaim against Guarantee. (ECF No. 34 at 17.)

[4] Guarantee asserts that the Indemnity Agreement requires the Defendants to indemnify Guarantee for "all losses, costs, and expenses incurred by [Guarantee] resulting from providing the Bonds, including but not limited to in-house fees, consultant fees, investigative costs, court costs, and attorney fees." (ECF No. 24 at 17.) "This includes not only losses in pursuing recovery of amounts paid on claims against the Bonds, but investigating and resolving claims, investigating and acting to prevent future claims, and prosecuting and defending claims related to issuance of the Bonds." (Id. at 17–18.)

Agreement. (Id. ¶¶ 48, 50.) A4 disputes the allegation that it is selling off collateral. (A4 Opp'n Mot. Partial Summ. J., ECF No. 58 at 18.) The court stayed the case from about October 2022 to February 2023. The parties initially agreed to stay the case to explore settlement, but failed to reach an agreement. (Joint Status Report, ECF No. 38 at 2–3.) The court stayed the case for a second time pending adjudication of A4's appeals of its termination on the Projects.

Guarantee then filed a supplemental brief in support of its motion for partial summary judgment. (ECF No. 53.) In addition to withdrawing its motion for a preliminary injunction, Guarantee provided an updated account of the Projects and clarified its request. (Id.) Guarantee argued it was entitled to specific performance of Indemnitors' obligations to immediate recovery of past losses[5] and the posting of collateral to mitigate future losses.[6] (ECF No. 53 at 6.) Guarantee further clarified its summary judgement request in its replies. (Opp'n Rule 56(d) Mot., ECF No. 75 at 2; Reply to Perry Opp'n Mot. Partial Summ. J., ECF No. 74 at 2.) Guarantee argued it was seeking summary judgment only on the claim for specific performance in posting collateral, not on the ultimate issue of indemnification. (Id.)

Perry filed a Rule 56(d) motion, asking the court to defer ruling on Guarantee's motion for partial summary judgment. (Rule 56(d) Mot., ECF No. 61.) Perry argued that the court should not require it as a matter of law to pay or provide collateral unless and until Perry could assess Guarantee's actions in investigating claims. (ECF No. 61 at 2.) Perry requested an

---

[5] Guarantee requested the court enter summary judgment in its favor in the amount of $8,017,997.93 for past losses incurred. (ECF No. 53 at 8.) The court interprets this request to be for damages.

[6] Guarantee requested the court enter summary judgment in its favor in the amount of $5,113,899.07 for projected future losses on both Projects. (ECF No. 53 at 8.) The court interprets this request to be for collateral.

additional six months to conduct discovery, and this court granted the motion. (Order Rule 56(d) Mot., ECF No. 79.)

Guarantee then sought relief from that order under Federal Rule of Civil Procedure 60(b). (ECF No. 80.) Guarantee argues that the sole issue remaining on summary judgment is whether it is entitled to collateral from Defendants under the Indemnity Agreement. (Id. at 5.) Guarantee's request, it claims, results from its right to demand collateral under the Indemnity Agreement, which Defendants have the responsibility to pay immediately. (Id. at 6–7.) Perry maintains that because Guarantee placed its actions during the investigations and payments at issue in its motion for summary judgment, Perry should have an opportunity to conduct discovery on such issues before responding. (Perry Opp'n to Rule 60(b) Mot. for Relief, ECF No. 82 at 3–6.) This court previously agreed with Perry, finding "[Guarantee's] MPSJ [to] not [be] so narrowly tailored as to make Perry's defenses irrelevant to summary judgment." (ECF No. 79 at 6; see ECF No. 53 at 8 (requesting the court enter summary judgment in Guarantee's favor "for past losses incurred, and, in addition to that judgment, requiring Indemnitors to post collateral" for "projected future losses, with any additional amounts or other adjustments").)

## LEGAL STANDARD

Courts may relieve a party from an order if a litigant shows "exceptional circumstances" for relief. Fed. R. Civ. P. 60(b); Hutchinson v. Kamauu, No. 2:20-cv-00796, 2023 WL 1785652, at *3 (D. Utah Feb. 6, 2023) (citation omitted). One such circumstance is "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Establishing justification for relief under 60(b)(1) is an issue determined on the merits. Gaddy v. Church of Jesus Christ of Latter-day Saints, No. 2:19-cv-00554, 2023 WL 4763981, at *3–4 (D. Utah July 26, 2023). "[M]otions premised upon mistake … provide relief … in only two instances: … when the party

has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or … the judge [makes] a substantive mistake of law or fact in the … order." Yapp v. Excel Corp., 186 F.3d 1222, 1231 (10th Cir. 1999).

## ANALYSIS

### I. Guarantee Has Not Shown Exceptional Circumstances Warranting Relief

Guarantee has not demonstrated that the court made a substantive mistake of law or fact in its order granting Perry's Rule 56(d) motion. While Guarantee insists that its request for partial summary judgment is limited solely to the issue of collateral, the amount of damages that Guarantee requests is intertwined with questions of both past losses and projected future losses. (See ECF No. 53 at 8 ("[Guarantee] requests that the [c]ourt enter summary judgment in its favor in the amount of $8,017,997.93 for past losses incurred, and … requiring Indemnitors to post collateral in the amount of $5,113,899.07 for projected future losses."); see also ECF No. 74 at 2 ("Accordingly, the [m]otion should be granted, and Defendants should be required to post acceptable collateral in amounts sufficient to secure full reimbursement of [Guarantee]'s actual and projected losses, costs and expenses under the bonds.").)

While the court has discretion to resolve a motion for partial summary judgment before the close of discovery, deciding Guarantee's motion now would prevent the parties from developing the factual record and would undermine the court's ability to determine whether genuine issues of material fact exist. The parties have until January 17, 2024, to complete discovery. It is in the interests of justice for the court to defer consideration of a motion for summary judgment until the relevant facts have been developed through discovery.

## II. Perry Is Bound by the Indemnity Agreement

Although the court finds that the Defendants are entitled to discovery, the court agrees with Guarantee that the extent to which Perry is bound by the terms of the Indemnity Agreement is a legal question that is ripe for adjudication.

Perry disputes the extent of its obligation to Guarantee, as Perry was not an original party to the Indemnity Agreement. (ECF No. 24-3.) But Perry signed riders that "[would] be attached to and form part of the … Indemnity [Agreement] made …." (Riders, ECF No. 24-8 at 2, 4.) Specifically, "[p]ursuant to the … Indemnity [Agreement] … [Perry] agrees to be … bound by the [Indemnity] Agreement as to any loss associated with the [Projects.]" (Id.) The riders state that "[Perry] shall only be liable to [Guarantee] for those losses associated with the [Projects.]" Neither the riders or the Indemnity Agreement define "loss." Perry argues that the riders do not obligate it to post collateral to protect Guarantee against anticipated losses.

A rider is "[a]n ancillary document that amends or supplements [a] primary document," such as a contract. Rider, Legal Info. Inst. (last updated Apr. 2021). In the insurance context, "[a] rider … is a writing added … to a policy … of insurance" that becomes "part of the contract to the same extent as if it were actually embodied therein," so long as certain requirements are met. 2 Couch on Ins. § 18:19 (2023). One requirement is that the rider must be "referred to in the policy" for the rider to attach. Id. And once it does, "the policy and the rider … constitute the contract of insurance and are to be read together to determine the contract actually intended by the parties." Id. Here, the Indemnity Agreement contains a clear provision that says "[t]he addition to this Agreement of any Indemnitor, including any entities acquired after the date of execution of this Agreement, may be effected by written rider executed by such Indemnitor only …" (ECF No. 24-3 at 4.) This, along with the language that riders "shall be attached to and

6

form part of the … Indemnity [Agreement,]" (ECF No. 24-8 at 2, 4), suggest that Perry's obligations to Guarantee can be ascertained only by looking at both the riders and the Indemnity Agreement.

The court finds that Perry's obligations to Guarantee include protecting Guarantee against anticipated losses, most notably in the form of posting collateral.  First, Perry signed the riders as an "entity indemnitor[.]"  (Id. (emphasis added).)  The Indemnity Agreement also provides that "[i]ndemnitors agree to pay to [Guarantee] upon demand … [a]ll loss … " and that "[a]s collateral security to [Guarantee,] … [i]ndemnitors [agree] to repay all loss … to [Guarantee], whether [now] o[r] [later] incurred[.]"  (ECF No. 24-3 at 2–3.)  Even without defining "loss," it is clear that the Indemnity Agreement obligates Indemnitors to cover both past losses associated with the Projects and anticipated losses.

Second, this court has previously held that indemnitors obligated to protect a surety from losses are responsible for covering both past losses and anticipated losses.  See Travelers Cas. & Surety Co. of Am. v. CraCar Construction Co., No. 2:17-cv-100, 2018 WL 3873678, at *4–5 (D. Utah Aug. 15, 2018) (referring to obligation to post collateral as responsibility to cover anticipated losses); Int'l Fidelity Ins. Co. v. La Porte Construction, Inc., No. 2:16-cv-00032, 2019 WL 575886, at *6 (D. Utah Feb. 12, 2019) ("Although [the Surety's] past Losses can be remedied with contract damages, … [its] additional and substantial anticipated Losses cannot."). That Perry is liable for "losses" associated with the Projects does not imply that Perry's obligation to Guarantee is limited to covering past losses.

## CONCLUSION

In its previous order, the court deferred ruling on Guarantee's motion for partial summary judgment and granted the parties two weeks from the close of discovery to file supplemental

7

briefs. Given the extent to which Guarantee's request for specific performance is intertwined with allegations of past losses for which Guarantee also seeks indemnification, the court finds that updated briefing is necessary and denies the currently pending motion for partial summary judgment without prejudice. Either party may file a motion for summary judgment at the close of discovery and Guarantee may include its claims for indemnification for past losses as well as its claims for specific performance on any future losses to which Guarantee alleges it remains exposed. Balancing the need to allow the Defendants appropriate discovery with Guarantee's request to be placed in funds in a timely manner, the court orders an expedited briefing schedule.

## ORDER

1. Because summary judgment is premature, Guarantee's motion for relief (ECF No. 80) is DENIED IN PART and GRANTED IN PART. The court will defer consideration of Guarantee's request for specific performance until the close of discovery. But the court finds that Perry is bound by the terms of the Indemnity Agreement.

2. The court DENIES WITHOUT PREJUDICE Guarantee's motion for partial summary judgment (ECF No. 24). The court orders the following expedited briefing schedule: Motions for summary judgment are due January 31, 2024. Responses are due by February 21, 2024. Any replies should be filed by February 28, 2024.

DATED this 3rd day of October, 2023.

BY THE COURT:

_Tena Campbell_
TENA CAMPBELL
United States District Judge